# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**CHS INDUSTRIES, LLC**
**1502 Industrial Drive, 12C**
**Edgewater, FL 32132**

              **Plaintiff,**

**v.**                                      **Civil Action No.**

**UNITED STATES CUSTOMS AND**
**BORDER PROTECTION**
**1300 Pennsylvania Avenue, NW**
**Washington, DC, 20229**

**&**

**UNITED STATES ENVIRONMENTAL**
**PROTECTION AGENCY**
**1200 Pennsylvania Avenue, NW**
**Washington, DC 20004**

**&**

**UNKNOWN EMPLOYEES OF U.S.**
**CUSTOMS AND BORDER PROTECTION**
**1300 Pennsylvania Avenue, NW**
**Washington, DC, 20229**

**&**

**UNKNOWN EMPLOYEES OF U.S.**
**ENVIRONMENTAL PROTECTION AGENCY**
**1200 Pennsylvania Avenue, NW**
**Washington, DC 20004**

              **Defendants.**
_____/

## COMPLAINT

1

Plaintiff, CHS Industries, LLC ["CHS"], by its undersigned attorney, for its complaint herein alleges upon information and belief as follows:

## Jurisdiction and Venue

1.    This Court possesses jurisdiction over this action pursuant to 28 U.S.C. §1331; 5 U.S.C. §702, *et seq*; and, the Fifth Amendment's Due Process Clause.

2.    Venue is proper in this case pursuant to 28 U.S.C. §1391, as the decisions at issue were made by U.S. Customs and Border Protection ["Customs"] and the U.S. Environmental Protection Agency ["EPA"] having headquarter offices in Washington, D.C.

## Parties

3.    CHS is incorporated and located in Edgewater, Florida.

4.    Defendant, United States is a government entity and includes Customs and EPA.

5.    Frank Jaramillo ["Mr. Jaramillo"]is the Area Port Director for Customs in Savannah, Georgia.  Mr. Jaramillo is being sued in his individual capacity.

6.    Mary C. Bensel Mills ['Ms. Mills"]is the Customs' Fines, Penalties and Forfeitures Officer in Savannah, Georgia.  Ms. Mills is being sued in her individual capacity.

7.    Jeffrey A. Kodish ["Mr. Kodish"] is the Attorney-Adviser for EPA.  Mr. Kodish is being sued in his individual capacity.

8.    At all times relevant to the events described herein, all the defendants have acted under color of federal law and continue to act under federal law.

## Facts

2

9.     CHS is an importer of stationary generators with non-road engines for Customs Entry No.: 605/50257756 ["generators"].

10.    CHS was formerly known as or doing business as CHS Machine Shop at the time the events began in this matter.

11.    CHS entered into an agreement with Fuan Liyuan Electrical Machinery Co., Ltd. ["Fuan"] of Fujian, China for the purchase of these generators.

12.    The terms of the agreement required Fuan to manufacture the generators; apply the appropriate labeling which complies with United States regulations; pack the generators in accordance with the United States laws; transport the generators to the United States; and, deliver the generators to CHS's facility in Edgewater, Florida.

13.    On or about August 7, 2006, the container of generators arrived at the Port of Savannah, Georgia.

14.    Customs issued Notice of Detention No.: 2006-1703-00046  on or about August 21, 2006 to CHS, awaiting EPA's review of the generators.  Mr. Jaramillo oversees and reviews any detentions at the Port of Savannah as the Area Port Director.

15.    Beginning on August, 7 2006, CHS, its customs broker and shipping agent began a series of written and telephone communications with Customs and EPA to ascertain why CHS's generators were being detained and how the generators could be released.

16.    Customs notified CHS that the wood shipping materials were not allowed entry into the United States.

17.    CHS submitted an application to manipulate and exported the noncompliant

3

wood packing materials on or about September 27, 2006.

18.    Customs seized CHS' goods on or about September 21, 2006 for an alleged violation of 40 C.F.R. §90.1003(a)(1)(I).  Enclosed as Exhibit A is a copy of the referenced Customs Seizure Notice executed by Ms. Mills.

19.    CHS' generators were presold to its customers.

20.    CHS has already lost standing orders from its customers.

21.    Should CHS not be able to deliver the seized engines by the end of this year, it faces the real possibility of losing all of its customers and potential future sales.

22.    CHS had consulted the EPA and relied upon its recommendations and regulations before purchasing its generators.

23.    CHS submitted its petition for relief to Customs on October 11, 2006. Enclosed as Exhibit B is a copy of CHS's petition for relief.

24.    Mr. Kodish provided his recommendation on behalf of EPA to Customs not to release the seized generators on November 13, 2006.  EPA alleges that CHS had not complied with its labeling requirements and now alleged a violation of 40 C.F.R. §§89.1003(a)(1)(ii) and 89.1003.(a)(6) which differ from the violation alleged in ¶18 of the complaint.  Enclosed as Exhibit C is a copy of the referenced EPA recommendation letter.

25.    Ms. Mills and/or Mr. Jaramillo denied CHS' petition for relief on behalf of Customs on November 14, 2006 under the provisions of 40 C.F.R. §90.1003(a)(1)(ii) which differs from those violations alleged in ¶24 of the complaint.  Customs and EPA would permit CHS to export the generators out of the United States.  Enclosed as Exhibit D is a

4

copy of the referenced Customs' decision letter.

26.    CHS labels are in complete compliance with the language of the EPA's regulations. Enclosed as Exhibit E are copies of CHS's labels.

**Count I**
**Plaintiff Is Entitled To Return of Property Pursuant to Rule 41(g)**

CHS realleges paragraphs 1 - 26.

27.    CHS is entitled to the immediate release of its seized generators pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure.

28.    If CHS' seized generators are not immediately released there will be a manifest injustice.

29.    CHS is suffering irreparable injury from the government's continued retention of its property.

30.    The seizure in this case is effectively shutting down CHS' ongoing business.

31.    The Customs' Seizure Notice (Exhibit A), the EPA Recommendation Letter (Exhibit C) and the Customs Decision Letter (Exhibit D) are inadequate because they each cite different regulations for the government's justification to seize the generators and they each have not recognized  CHS' actual compliance with the EPA's regulation.

32.    Customs and EPA seized CHS' generators without probable cause and the government is unduly delaying the institution of forfeiture proceedings.

33.    The petitioning process provided in the Customs Seizure Notice (Exhibit A) specifically 19 U.S.C. §1618, cannot be completed without EPA's review of a supplemental

petition before the same officials of EPA and Customs, thus making this petitioning (adjudicatory ) process a denial of due process.

34.    CHS has a cause of action that invokes the power of this Court to enforce its rights protected by the U.S. Constitution.

WHEREFORE, plaintiff respectfully requests the Court to order the immediate release of its seized generators from Customs' custody.

### Count II
### Plaintiff Is Entitled To Monetary Damages Pursuant To *Bivens*

CHS realleges paragraphs 1-34.

35.    All unknown defendants did not recognize that EPA and Customs lacked probable cause to justify the seizure and the government's continued retention of CHS' generators.

36.    All unknown defendants have refused to release CHS' generators during the detention phase and petitioning phase, thus making this petitioning (adjudicatory) process a denial of due process.

37.    CHS spent $2,592.50 to export the alleged non-compliant wood discussed in ¶ 17 of the complaint.

38.    As a direct result of the above referenced due process violations, CHS has amassed thousands of dollars in potential storage costs for the seizure.  Customs estimates that the storage costs through December 31, 2006 will be $4,309.30.  The demurrage and dray costs for Customs holding the goods at the port were $8,965.00.

39.    As a direct result of the above referenced due process violations, CHS has lost 3 wholesale accounts.  These 3 referenced accounts have a potential dollar amount of $201,000.00 worth of sales in a year.

40.    As a direct result of the above referenced due process violations, CHS has lost all retail accounts which have a potential net profit of $270,000.00 with a potential bill of $40,500.00 in potential service and a potential sales of $27,000.00 for replacement parts.

41.    As a direct result of the above referenced due process violations, CHS has had to reduce payroll, purchase supplies on credit and change the ordinary course of business.

42.    The seizure in this case is effectively shutting down CHS' ongoing business.

43.    As previously alleged, CHS has a cause of action that invokes the power of this Court to enforce its rights protected by the U.S. Constitution when its Due Process Rights of the Fifth Amendment were violated.

44.    CHS is able to redress the above referenced rights, violations and injuries in monetary damages if it is able to prevail on the merits.

45.    Monetary damages are appropriate in this case because it is a remedial mechanism normally available in  the federal courts.

WHEREFORE, plaintiff respectfully requests the Court to order damages to be paid to the plaintiff and such other and further relief as the Court may deem just and proper, including attorney's fees, pre-judgment interest, costs and disbursements of this action.

7

Respectfully submitted,

Peter S. Herrick
Peter S. Herrick, P.A.
Attorney for Plaintiff
CHS Industries, LLC
3520 Crystal View Court
Miami, Florida 33133
Tel.:    305-858-2332
Fax.:    305-858-6347
Email:  pherrick@bellsouth.net
D.C. Bar No. 137935

# EXHIBIT A

1 East Bay Street
Savannah, GA 31401



**U.S. Customs and
Border Protection**

CERTIFIED - RETURN RECEIPT REQUESTED        ENF-4-SV:F:MJP

**OCT  3 2006**

CHS Machine Shop
1502 Industrial Drive STE 12-C
Edgewater, Florida 32123

Re: Case Number 2006-1703-000118-01

Dear Sir:

The records of this office indicate that you might have an interest in certain property seized by Customs at Savannah, Georgia, on September 21, 2006. The property was seized under the provisions of 19 USC 1595a(c)(2)(A)and 40 CFR 90.1003(a)(1)(i) for violation of Environmental Protection Agency (EPA) regulations for diesel non-road engines.

The seized property is described as follows:

25 each diesel generators and parts

The total appraised domestic value of the property is $49,910.

Under the provisions of title 19, United States Code, section 1618, you may petition for relief from the above liability. The enclosed Notice of Information for Claimants explains your options with regard to the remission of the forfeiture of seized property. If you do wish to petition for relief from the forfeiture, you must provide an express agreement to defer judicial or administrative forfeiture proceedings until completion of the administrative process. Completion of the enclosed Election of Proceedings form will provide this express agreement.

2-

All petitions should be filed within 30 days of the date of this letter at the following
address: Customs and Border Protection Service, One East Bay Street, Savannah,
Georgia 31401.

If you should have further questions, please contact Mary J. Pringle at 912-447-9435.

Sincerely,

Mary C. Bensel-Mills
Fines, Penalties & Forfeitures Officer

Enclosure

# EXHIBIT B

# PETER S. HERRICK, P.A.
## ATTORNEYS AT LAW

**MAIL TO:**
3520 Crystal View Court
Miami, Florida 33133
Tel. 305-858-2332
Fax. 305-858-6347
Of Counsel: Roy Leon

301 East Ocean Blvd.
Suite 530
Long Beach, CA 90802
Tel. 562-628-2355
Email. pherrick@bellsouth.net
Web. CustomsLawyer.Net

October 11, 2006

**MAIL & TELECOPY (912-447-9441)**

Fines, Penalties and Forfeitures Office
U.S. Customs and Border Protection
1 East Bay Street
Savannah, GA 31401

Attn:  Mary C. Bensel-Mills

Re:  **Petition for Relief / Request for the Immediate Release of Seized Container**
    Petitioner:  CHS Machine Shop
    Case No.:  2006-1703-000118-01
    My File No.: 633.00

Dear Ms. Mills:

I am representing CHS Machine Shop ["CHS"] in the referenced matter.  Enclosed as Exhibit A is an Executed Appointment and Authorization of Attorney.  This is a petition for relief filed pursuant to 19 U.S.C. §1618.  Enclosed as Exhibit B is the executed Election of Proceedings Form.

### Background

CHS is an importer of stationary generators with non-road engines located in Edgewater, Florida.  On or about August 4, 2006, CHB imported 26 stationary generators from China.  Customs issued a notice of detention on or about August 21, 2006 awaiting the Environmental Protection Agency's ["EPA"] review.

EPA alleged an initial problem with its 3520-21 form.  CHS had inadvertently entered the wrong date when signing the forms.  CHS attempt to remedy the initial alleged violation

1

by submitting corrected forms.

During this time, Customs notified CHS that the wood shipping materials are not allowed entry into the United States. On or about September 27, 2006, CHS submitted an application to manipulate and export the noncompliant wood packing materials.

Customs seized CHS goods on or about September 21, 2006 for an alleged violation of 40 C.F.R. §90.1003(a)(1)(I). CHS has filed a Freedom of Information Act Request for all records in this case on or about October 9, 2006. CHS reserves the right to amend its petition for relief upon release of the reference FOIA records.

## The Seized Goods Are Stationary Generators With Non Road Engines

CHS has previously imported the seized generators using the 3520-21 EPA forms for stationary engines. CHS had used several EPA label stickers detailing the stationary purpose of the engines. CHS goes above and beyond EPA requirements with several printed warnings and attachments. In fact, CHS requires that their clients must execute a stationary warning regarding the stationary purpose of the generators in order to obtain the warranty for the generator. Enclosed Exhibit C are copies of the referenced labels and warning.

In fact, EPA recognized that CHS's goods are "non-road engines" pursuant to 40 C.F.R. 89.2. Enclosed as Exhibit D is a copy of the email from Alan Stout, the EPA's Office of Transportation and Air Quality from August 1, 2005. This email recognizes CHS use of the referenced forms and stickers as a way of illustrating that the seized goods in this case are non road engines.

Therefore, EPA has applied the wrong statute for its legal justification to seize the goods in this case for 40 C.F.R. §90.1003(a)(1)(I) does not apply to diesel engines. CHS referred to Title 40 of the Code of Federal Regulations and the EPA's fact sheet entitled EPA Technical Highlights, Emission Regulations for Stationary and Mobile Engines, EPA 420-F-02-034, September, 2002. As a direct result of this EPA regulations and references, the seized goods were designed and placed on concrete pads to ensure that the goods stay stationary for the remainder of their usage and/or life of the goods.

## There Was No Reason For Customs To Seize The Goods In This Case

Customs should have considered various alternatives in lieu of seizure. Customs could have followed the following procedures which are discussed in the Customs' publication entitled the Customs Administrative Enforcement Process: Fines, Penalties, Forfeitures and Liquidated Damages (October, 2001):

1.    Reject or deny entry (which is not applicable based on the reference goods and EPA's email);
2.    Detain goods until the alleged remedies are corrected and the EPA recognizes the correct status of the generators;
3.    If the goods are not prohibited or during the detention phase, the goods may be entered into a bonded warehouse or a foreign trade zone with subsequent withdrawal once the defect or restriction is corrected.

Customs should have afforded the CHS the opportunity to remedy the alleged violations during the initial detention phase based on the extenuating circumstances in this case. Therefore, Customs should have afforded CHS the opportunity **to** perform the following:

1.    Move the goods to a bonded warehouse or free trade zone to avoid any unreasonable storage costs;
2.    Manipulate the goods and export the nonconforming wood packaging.

These alternatives would avoided any the unnecessary delays in referring this matter to the Fines, Penalties and Forfeitures Office.

CHS is the only party who has suffered in this case because it was unaware of any alleged violations. As a result, CHS has incurred additional costs such as attorney fees, potential storage costs and lost revenue. Seizure of the merchandise in this case is an unwarranted punishment of the CHS when it has been a victim in this case.

### Customs Did Not Have Probable Cause to Seize The Petitioner's Goods

For Customs to seize the merchandise described in the seizure notice it must have probable cause based on the facts and circumstances of the case that a law enforced by Customs has been violated by the petitioner. 19 U.S.C. §1615.

An able analysis of section 1615 and the high standard for probable cause may be found in the following excerpts from United States of America v. $191,910.00, 16 F. 3d 1051 (9th Cir. 1994). At page 1068:

"Because the government must swear that probable cause exists at the time it institutes the action, and that specific facts exist to support probable cause, it is entirely reasonable to conclude that probable cause must actually exist when the government brings forfeiture proceedings.... because forfeiture statutes are strictly construed against the government. See, United States v. One 1936 Model Ford V-8 DeLuxe Coach, 307 U.S. 219, 236 (1939). There are good

3

reasons for this rule. Government confiscation of private property is disfavored in our constitutional system. We are therefore reluctant to find that a statute allows forfeiture where a plausible interpretation of the statute would not allow it."

"Forfeiture is a 'harsh and oppressive procedure' which is not favored by the courts. (citation omitted). Accordingly, 'the burden on the government to adhere to procedural rules should be heavier than on claimants.' <u>United States v. $38,000.00 in United States Currency</u>, 816 F. 2d 1538, 1547 (11th Cir. 1987)." at pp. 1068-1069.

"[T]he government's belief that the [seized merchandise] is subject to forfeiture may be more than mere suspicion but can be less than prima facie proof. (citation omitted) We have held that the determination of whether probable cause exists to support a forfeiture must be based on the totality of the circumstances." <u>$191, 910, supra</u>, p. 1071.

Customs did not have probable cause to seize the goods in this case based on the totality of the facts and circumstances in this case: 1) The goods are **Stationary Generators With Non Road Engines** 2) the EPA's legal citation for the seizure does not apply to **Stationary Generators With Non Road Engines**; and, 3) Customs and EPA have not provided any examination and laboratory tests that disprove that the seized goods are anything but **Stationary Generators With Non Road Engines**.

**The Forfeiture In The Referenced Case**
**Must Be Remitted Pursuant To Section 1618**

The meaning and purpose and effect of section 1618 was fully set forth in <u>United States v. United States Coin & Currency</u>, 401 U.S. 715, 721 (1971) where the Supreme Court stated:

"An express statutory provision permits the innocent owner to prove to the Secretary of the Treasury that the 'forfeiture was incurred without wilful negligence or without any intention on the part of the CHS...to violate the law....' **19 U.S.C. §1618.** Upon this showing, the Secretary is authorized to return the seized property 'upon such terms and conditions as he deems reasonable and just.' It is not to be presumed that the Secretary will not conscientiously fulfill this trust, and the courts have intervened when the innocent CHS's protests have gone unheeded. **When the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise.**"[citations and footnotes omitted][emphasis added].

4

In a case[1] which applied the reasoning of *United States Coin & Currency* the court set forth the following:

> "In order to avoid harsh results in forfeiture proceedings, Congress delegated discretionary authority to remit or mitigate such forfeitures:
>
> > '...the Secretary of the Treasury...if he finds that such fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the CHS to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine penalty, or forfeiture, may remit or mitigate the same upon such terms and conditions as he deems reasonable and just....' 19 U.S.C. §1618
>
> It is evident that Congress clearly intended by such delegation that forfeitures against wholly innocent parties be appropriately mitigated by the [Secretary of the Treasury]." at page 1329.

The CHS is an innocent owner and is not engaging in a criminal enterprise. In the present case the forfeiture statutes to be read in their entirety is 19 U.S.C. §1618. Pursuant to section 1618, CHS requests Customs to set terms and conditions for the release of the seized merchandise which are "reasonable and just." In this case reasonable and just are to allow the importer the following: 1) Permit CHS to move the seized goods to a free trade zone or bonded warehouse to avoid storage costs; 2) Permit CHS to manipulate the goods in order to repair the alleged violations with the wood packing materials while Customs review the petition; and, 3) Permit CHS to import the goods by using the 3520-21 forms/sticker labels.

Pursuant to section 1618, in this case, the CHS is an innocent party and the seized goods were non road engines. This section then requires the remission of the forfeiture upon such terms and conditions as Customs deems reasonable and just. If the decision remains to destroy the merchandise, then Customs is imposing an unjustifiable penalty on the CHS who is not involved in a criminal enterprise.

The Supreme Court, in its interpretation of section 1618, expects the agency to conscientiously fulfill its trust in making decisions on petitions. If the claimed innocence of the CHS goes unheeded then the courts may have to intervene.

---

[1] U. S. v. One 1974 Mercury Cougar XR 7, 397 F. Supp. 1325 (CDCA 1975).

## CHS May Manipulate the Goods

As previously discussed, CHS should have been afforded the opportunity to manipulate the goods at the detention phase in order to remedy the alleged deficiencies and to comply with Customs regulations. Therefore, Customs should have initially allowed CHS to move the goods to a bonded warehouse or free trade zone to conduct the manipulation.

Customs may entertain and grant our request based on the following mitigating factors:

1.  Immediate Remedial Measures - EPA has allowed the importation of CHS goods in the past using the referenced forms and labels. EPA has received an email from EPA recognizing its generators and non-road engines. Second, the wood packaging materials may be easily manipulated and exported.

2.  Prior Record - CHS has a perfect record with Customs and it is an innocent owner with no prior criminal history in the United States. Also, there is no pending criminal investigation or parallel criminal proceedings.

3.  Cooperation with investigation - CHS has not provided any improper / invalid information in this matter. In fact, CHS and its Customs broker were working diligently with Customs and EPA to attempt to avoid the harsh results of forfeiture proceedings.

Customs cannot demonstrate any of the following aggravating factors: 1) obstructing an investigation; 2) withholding evidence; 3) providing misleading information concerning the violation; 4) prior substantive violations; 5) evidence of a motive to evade prohibition or restriction on the admissibility of the merchandise; and 6) failure to comply with a lawful demand for records or customs summons.

## Application of the Mod Act

CHS had no prior knowledge of any alleged violations with its imports prior to this case. CHS has shown its lack of intent to violate any laws of this country by requesting to repair the alleged violation and the absence of any alleged, repetitive, violative conduct.

Michael T. Schmitz Assistant Commissioner of the Office of Regulation and Rulings wrote in the Preface of the Customs Publication entitled the Customs Administrative Enforcement Process: Fines, Penalties, Forfeitures and Liquidated Damages (February, 2004) the following passage:

6

"Two concepts that emerge from the Mod Act are 'informed compliance' and 'shared responsibility,' which are premised of the idea that in order to **maximize voluntary compliance** with laws and regulations of U.S. Customs and Border Protection, the trade community needs to be clearly and completely informed of its legal obligations. Accordingly, the Mod Act imposes a greater obligation on CBP to provide the public with improved information concerning the trade community's rights and responsibilities under Customs regulations and related laws." [emphasis added]

CHS has not violated any laws with its generators. CHS requests to comply with the Customs regulations by manipulating the goods and destroying the allegedly infringing paper banner. Customs may fulfill its obligation by providing my client the opportunity to remedy the alleged violation by granting my client's reasonable request.

## Conclusion

CHS has not and did not intend to violate any laws of this country. Due to the fact the EPA did not show any probable cause for the seizure and claims the incorrect law for the alleged violation. As a direct result of government's actions and/or inactions, CHS is incurring storage costs in excess of $10,000.00.

Customs and EPA have not protected the American consumer and/or any consumer group. CHS is the only victim in this case. CHS requests the immediate release of its goods so it may manipulate the alleged violative wood packing materials under Customs Supervision, export the alleged violative wood packing materials and ship the goods the final destination in Edgewater, Florida.

Sincerely,

Peter S. Herrick

Enclosures

cc:    CHS Machine Shop

7

# EXHIBIT A

Fee Agreement
August 26, 2006
Page -4-

## APPOINTMENT AND AUTHORIZATION OF ATTORNEY

TO:   United States Customs and Border Protection and
      Environmental Protection Agency

Re:   CHS Industries, Inc.

Peter S. Herrick, P.A. is hereby appointed, and authorized to act as attorney at law

for the undersigned with respect to matters before the United States Customs and Border

Protection & EPA

Said attorney is authorized, and a limited power of attorney is granted to said attorney

to execute any documents required in the case including, but not limited to, Election of

Proceedings (Form AF), Hold Harmless Agreements, Freedom of Information Act Requests

and Release Dispositions on behalf of the undersigned

A duplicate, photocopy, telefax copy or photocopy of a telefax copy of the signed

original shall have the same validity, force and effect as the original

Dated:   9- 01-06

CHS Industries, Inc.

Howard Cox

Howard Cox

# EXHIBIT B

## ELECTION OF PROCEEDINGS
## FORM AF - PUBLISH

**NOTE: READ THE ATTACHED NOTICE OF SEIZURE AND INFORMATION FOR CLAIMANTS BEFORE YOU FILL OUT THIS FORM. THIS FORM MUST BE COMPLETED AND RETURNED WITH YOUR PETITION OR OFFER. IF YOU DO NOT COMPLETE AND RETURN THIS FORM, WE SHALL PROCEED TO FORFEIT THE PROPERTY ADMINISTRATIVELY, REGARDLESS OF WHETHER YOU FILE A PETITION OR OFFER.**

TO: CUSTOMS FINES, PENALTIES AND FORFEITURES OFFICER:

I understand that property in which I have an interest has been seized by the Customs and Border Protection Service, under Case Number 2006-1703-000118-01.

Check ONLY ONE (1) of the following choices:

**☑ I REQUEST THAT THE CUSTOMS CONSIDER MY PETITION OR OFFER ADMINISTRATIVELY.** That document is attached. By making this request, I understand that I am giving up my right to (1) begin administrative forfeiture proceedings immediately, as provided by title 19, United States Code (U.S.C.), section 1607 and title 19, Code of Federal Regulations (CFR), section 162.45, or (2) immediate referral of the case to the U.S. Attorney for court action, as provided by 19 U.S.C. 1608 and 19 CFR 162.47. If administrative forfeiture has begun, it will be stopped until my petition or offer is considered. However, I understand that *at any time* I can request, in writing, that you begin administrative forfeiture proceedings, and you will continue to consider my petition or offer. I also understand that *at any time* I can file a claim and cost bond with you and Customs consideration of my petition or offer will stop and the case will be sent to the U.S. Attorney for court action.

[  ] **I REQUEST THAT THE CUSTOMS BEGIN ADMINISTRATIVE PROCEEDINGS TO FORFEIT THE PROPERTY.** Please immediately begin publication of the notice of seizure and intent to forfeit the property, and consider my petition or offer, if any. I understand that within twenty (20) days of the first publication of the notice, I can request that you send the case to the U.S. Attorney for court action.

[  ] **I ABANDON THE PROPERTY AND I REQUEST THAT THE CUSTOMS BEGIN ADMINISTRATIVE PROCEEDINGS TO FORFEIT THE PROPERTY.** Please immediately begin publication of the notice of seizure and intent to forfeit. I abandon any claim or interest in the property.

[  ] **I REQUEST THAT THE CUSTOMS SEND MY CASE FOR COURT ACTION.** Please immediately refer the case to the U.S. Attorney for a court decision. I am filing/will file a claim and cost bond with you.

_____          _10/11/06_
Signature                         Date

Peter S. Herrick, Esq.
Peter S. Herrick, P.A.
Attorney for Petitioner

# EXHIBIT C

## DIESEL GENERATING SETS

CHS GEN-SETS
EDGEWATER, FL (386)-427-0330

| TYPE | SF - | | PHASE | 3 | NO. | |
|------|------|--|-------|---|-----|--|
| KVA | | | V | 110/220 | A | |
| COS φ | 1.0 | Hz | 60 | SPEED | 1800 | r/min |
| EX.VOLT | | V | EX.CUR | | | A |
| ENGINE | | | | | | kW/HP |
| DIMENSIONS (LxWxH) | | | | | | mm³ |
| WEIGHT | | kg | DATE | | | |

Sample I.D Plate on every Machine.

# Warning
# Professional Installation Required

Electricity is danderous shock,fire,& death may result
from improper installation.
All installations should be done by quailifed
electricians. All states require a permit to install with
inspection. Failure to install in accordance with state
& local regulations, may result in fines and may void
your warranty.

# Fuel Warning

This diesel genset requires the use of the
following fuel :
Low Sulfur / Green road diesel
Do Not use #2 home heating oil or Off road "red"
fuel.
Failure to use the correct fuel will result in
carbon build up
& premature failure of the fuel injectors & fuel
pump .Failure
to use the correct fuel will void warranty.
Consult with manufacturer before attempting to
use Bio-diesel.
K1 Kerosene (water clear) may be used as
emergency fuel but
must be mixed 50/50 with Green diesel.

# WARNING
## Stationary Generator

All CHS Diesel generators are sold as Stationary use only.
All machines are serial numbered & That number
corresponds with the physical address The machine was
sold to and originally installed at. Under Federal law the
machine must remain at that address for its entire life.
Stationary generators may not be moved, resold & moved
or mounted on any type of trailer or vehicle.
Any Person that violates the federal laws on stationary
generator use is subject to fines of $32,500.00 per day & or
imprisonment.
Electrical contractors Must supply CHS The address that
the machine was installed at when sold. Failure to comply
will void factory warranty.
CHS requires all homeowners /do it yourself customers to
sign this document and it MUST BE RETURNED WITH
YOUR WARRANTY REGISTRATION to validate your
warranty.
CHS shall not be liable for violations or misuse of this
product.

Signed-_____    Date-_____

# EXHIBIT D

**YAHOO! MAIL**

Print - Close Window

**Date:**  Mon, 01 Aug 2005 09:53:32 -0400

**From:**  Stout.Alan@epamail.epa.gov

**Subject:**  Re: Fw: Ci stationary rice/Info/HELP

**To:**  cylinderheadservice@yahoo.com

**CC:**  Roy.Sims@epamail.epa.gov

Howard,
We consider engines to be mobile (or "nonroad") if they are installed in
a self-propelled vehicle, or if they are portable and will be moved
around periodically.  It sounds like the units you are interested in
importing will stay in one place for a long time (see the definition o
"nonroad engine" in 40 CFR 89.2), which means that it qualifies to be
excluded as a stationary engine.  The label is intended to communicate
this to the owner.  The label (plus the 3520-21 form) should also be
all
you need to clear Customs without trouble.

I am attaching a fact sheet for further background on questions relate
to stationary and mobile engines.  Let me know if you have additional
questions.

Alan Stout
U.S. EPA Office of Transportation and Air Quality
2000 Traverwood Dr.
Ann Arbor, MI 48105
734-214-4805
734-214-4816 (fax)
stout.alan@epa.gov
EPA imports:    www.epa.gov/otaq/imports
Regulations:
http://ecfr.gpoaccess.gov/cgi/t/text/text-idx?c=ecfr&sid=94cf84cc9b9f6

Copy of Letter from EPA
Stationary "rice" Unit. 2005

P. 1

* * * Transmission Result Report(MemoryTX) ( Oct.11. 2006 3:50PM ) * * *

1)
2)

Date/Time: Oct.11. 2006 3:48PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 3303 Memory TX | 19124479441 | P. 18 | OK | |

Reason for error
E.1) Hang up or line fail                E.2) Busy
E.3) No answer                           E.4) No facsimile connection

## PETER S. HERRICK, P.A.
### ATTORNEYS AT LAW

**MAIL TO:**
3520 Crystal View Court
Miami, Florida 33133
Tel. 305-858-2332
Fax. 305-858-6347
Of Counsel: Roy Leon

301 East Ocean Blvd.
Suite 530
Long Beach, CA 90802
Tel. 562-628-2355
Email. pherrick@bellsouth.net
Web. CustomsLawyer.Net

October 11, 2006

**MAIL & TELECOPY (912-447-9441)**

Fines, Penalties and Forfeitures Office
U.S. Customs and Border Protection
1 East Bay Street
Savannah, GA 31401

Attn: Mary C. Bensel-Mills

Re:  **Petition for Relief / Request for the Immediate Release of Seized Container**
Petitioner:  CHS Machine Shop
Case No.:  2006-1703-000118-01
My File No.: 633.00

Dear Ms. Mills:

I am representing CHS Machine Shop ["CHS"] in the referenced matter. Enclosed as Exhibit A is an Executed Appointment and Authorization of Attorney. This is a petition for relief filed pursuant to 19 U.S.C. §1618. Enclosed as Exhibit B is the executed Election of Proceedings Form.

**Background**

CHS is an importer of stationary generators with non-road engines located in Edgewater, Florida. On or about August 4, 2006, CHB imported 26 stationary generators from China. Customs issued a notice of detention on or about August 21, 2006 awaiting the Environmental Protection Agency's ["EPA"] review.

EPA alleged an initial problem with its 3520-21 form. CHS had inadvertently entered the wrong date when signing the forms. CHS attempt to remedy the initial alleged violation

1

# EXHIBIT C

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
AIR ENFORCEMENT DIVISION
MOBILE SOURCES ENFORCEMENT BRANCH
WESTERN FIELD OFFICE
12345 W. ALAMEDA PARKWAY, SUITE 214
DENVER, COLORADO 80228
(303) 236-9500 - FAX (303) 236-9514

November 13, 2006

VIA FAX TRANSMISSION
AND REGULAR U.S. MAIL

Fines, Penalty and Forfeitures Office
U.S. Customs and Border Protection
1 East Bay Street
Savannah, GA 31401

Attn: Mary C. Bensel-Mills

Re:        CHS Machine Shop - Petition for Relief
Case No:   2006-1703-000118-01

Dear Ms. Mills:

        Thank you for providing the United State Environmental Protection Agency (EPA) with an opportunity to submit a recommendation to U.S. Customs and Border Protection (Customs) regarding the above referenced Petition for Relief.  We have reviewed the petition as well as additional facts and information that we have gathered regarding this case, and recommend that Customs require CHS Machine Shop (CHS) to export the generators at issue in this case to a location outside the North American continent.

        EPA's Compression Ignition (CI) Nonroad Regulations at 40 C.F.R. § § 89.1003(a)(1)(ii) and 89.1003(a)(6) prohibit any person from importing any diesel nonroad engine unless it is covered by a valid Certificate of Conformity and bears a permanently affixed EPA Emissions label, or is excluded from the certification requirements.[1]

---

[1]  40 C.F.R. § § 89.1003(a)(1)(ii) prohibits any person from importing any diesel nonroad engine unless it is covered by a valid Certificate of Conformity.  40 C.F.R.§ 89.1003(a)(6) prohibits a manufacturer from introducing a nonroad engine into commerce unless it is covered by a Certificate of Conformity.  Under 40 C.F.R.§ 89.2, the definition of a manufacturer includes an importer.

11/16/08

40 C.F.R.§ 89.2 provides the following definition of a nonroad engine:

*Nonroad engine* means:

(1) Except as discussed in paragraph (2) of this definition, a nonroad engine is any internal combustion engine:

* * *

(iii) That, by itself or in or on a piece of equipment, is portable or transportable, meaning designed to be and capable of being carried or moved from one location to another. Indicia of transportability include, but are not limited to, wheels, skids, carrying handles, dolly, trailer, or platform.

(2) An internal combustion engine is not a nonroad engine if:

* * *

(iii) the engine otherwise included in paragraph (1)(iii) of this definition remains or will remain at a location for more than 12 consecutive months or a shorter period of time for an engine located at a seasonal source. A location is any single site at a building, structure, facility, or installation. . .

40 C.F.R.§ 89.1003(b)(4) excludes stationary source engines from the certification requirements of the Nonroad CI Regulations. This section of the regulations provides:

Certified nonroad engines shall be used in all vehicles and equipment manufactured on or after the applicable model years in §89.112 that are self-propelled, portable, transportable, or are intended to be propelled while performing their function, unless the manufacturer of the vehicle or equipment can prove that the vehicle or equipment will be used in a manner consistent with paragraph (2) of the definition of nonroad engine in §89.2.

The 3520-21 form that accompanied the entry at issue in this case declared the subject generators were excluded from the CI Nonroad Regulations because they are stationary source engines. On September 20, 2006, EPA recommended that Customs seize the subject generators because they had some indication of portability, and the importer failed to prove that the generators were stationary sources. EPA concluded that CHS failed to demonstrate that the subject engines were stationary sources because the size and configuration of the generators indicated that they were portable and transportable. EPA based this decision, in part, upon our understanding that the generators are equipped with outlets that would allow them easily be used to power tools or other electrical equipment and that the generators could be easily moved between locations.

2

In its Petition for Relief, CHS argues that the subject generators are stationary source engines that are excluded from the CI Nonroad Regulations. 40 C.F.R.§1039.20 requires diesel generators that are intended to be excluded as a stationary source to have permanent labels that contains the following specific language:

"THIS ENGINE IS EXEMPTED FROM THE REQUIREMENTS OF 40 CFR PARTS 89 AND 1039 AS A "STATIONARY ENGINE." INSTALLING *OR USING* THIS ENGINE IN ANY OTHER APPLICATION MAY BE A VIOLATION OF FEDERAL LAW SUBJECT TO CIVIL PENALTY." (emphasis added)

This language is required to ensure that engines that are claimed to be stationary sources will be used in the manner consistent with the stationary source exclusion. The generators that CHS imported failed to comply with this labeling requirements. Although the generators did have labels affixed to them, the labels did not contain the correct language. In particular, the labels failed to warn parties who purchase the generators that **using** the engines in any application other than a stationary source may be a violation of law. A copy of a photograph of the labels is enclosed. Without this critical language, the importer cannot assure that the subject engines will consistently be used as a stationary source.

Since the subject generators did not comply with the certification and labeling requirements applicable to nonroad engines, and since CHS has not met its burden of demonstrating that the subject generators meet the applicable requirements for the stationary source exclusion, EPA recommends that Customs require CHS to export the generators at issue in this case to a location outside the North American continent. In the event that CHS exports the generators to a location outside the North American continent, EPA does not intend to seek civil penalties in this case.

Thank you again for your continued assistance in ensuring compliance with EPA's nonroad regulations.

Sincerely,

Jeffrey A. Kodish

Attorney-Advisor

Enclosure

Cc: Peter S. Herrick, Esq.

3

Enclosure

CHS MACHINE
EMISSION CONTROL INFORMATION
Eng Dis-2.7L,37.2BHP/27.8KW
This engine is excluded from the
requirements of 40CFR1039 as a
"STATIONARY ENGINE", Installing
this engine in any other application
may be a violation of Ferdeal Law
& subject to civil penalty



CHS MACHINE
EMISSION CONTROL INFORMATION
Eng Dis-3.3L MAX BHP40.2/30KW
This engine is excluded from the
requirements of 40CFR1039 as a
"STATIONARY ENGINE" Installing
this engine in any other application
may be a violation of Federal Law &
subject to Civil Penalty



C H S MACHINE
EMISSION CONTROL INFORMATION
ENG DIS-1.1L MAX BHP-21.7/16.18KW
THIS ENGINE IS EXCLUDED FROM THE
REQUIREMENTS OR 40CFR1039 AS A
" STATIONARY ENGINE ". INSTALLING THIS
ENGINE IN ANY OTHER APPLICATION MAY BE A
VIOLATION OF FEDERAL LAW & SUBJECT TO
CIVIL PENALTY.

# EXHIBIT D



1 East Bay Street
Savannah, GA 31401

**U.S. Customs and
Border Protection**

NOV 1 4 2006                    ENF-4-SV:F:MJP

Mr. Peter S. Herrick
3520 Crystal View Court
Miami, Florida 33133

Re:    Case Number 2006-1703-000118-01
       Importer - CHS Machine Shop

Dear Mr. Herrick:

This is in response to the petitions dated October 11, 2006, and October 20, 2006,
seeking relief from forfeiture in connection with the above-referenced case involving the
seizure of 25 diesel generators and parts. The property was seized on September 21,
2006 under the provisions of 19 USC 1595a(c)(2)(A) and 40 CFR 90.1003(a)(1)(i)
because the imported diesel generators and parts violated Environmental Protection
Agency (EPA) regulations for diesel non-road engines.

The petitioner requests relief from forfeiture based on the arguments the seized
generators are stationary generators with non-road engines and are compliant with
EPA's regulations. Therefore, Customs and Border Protection did not have probable
cause to seize the subject generators. The importer did not intend to violate any United
States law and requests permission to manipulate the generators.

On October 24, 2006, this office advised that the petition was referred to EPA. On
November 13, 2006, EPA provided their recommendation to allow export of the seized
generators to a location outside the North American continent.

A review of the case file reveals the violation occurred as charged. The EPA Form
3520-21 presented with the entry declared the subject generators as excluded from the
CI non-road regulations because they are stationary source engines. EPA
recommended CBP seize the generators because there was an indication of portability.
The size and configuration indicated they were portable and transportable. The importer
failed to prove during the detention period the generators were stationary sources and
in compliance with 40 CFR 89.2. Additionally, the seized generators failed to comply
with the labeling requirements under 40 CFR 1039.20. Forfeiture of the seized property
will be remitted upon compliance with the following conditions.

1.  Payment of $3,046 (10% of dutiable value - $30,462).

-2-

2. Execution of the enclosed Hold Harmless Agreement.
3. Payment of storage costs estimated to be $3,717 as of November 30, 2006. Upon receipt of the required documentation, a disposition order will be issued authorizing release of the seized property. It will provide the telephone number of the Customs seized property contractor who should be contacted to ascertain the location of the property and the total seizure costs (which are paid directly to the contractor). Lastly you should provide the name of the individual who will accept custody of the seized property from the storage contractor. The property will be released only to this person, unless an agent is specifically identified in a notarized letter of authorization.
4. Export to a non-contiguous country (not Canada or Mexico) under Customs supervision. A CBP Form 7512 Transportation Entry should be prepared citing the method of transportation as I.E. (immediate exportation). The CBP Form 7512 must reference the seizure number and state "No Diversion Allowed." Upon receipt of an acceptable CBP Form 7512, release to the designated inbond carrier will be authorized. After exportation has been accomplished, CHS Machine Shop will be required to present a copy of the CBP Form 7512 signed by both the exporting carrier and Customs at the port of exportation.

Payment in the amount of $3,046 and the executed Hold Harmless Agreement are due within 30 days from the date of this letter to Customs and Border Protection, One East Bay Street, Savannah, Georgia 31401. A copy of this letter should accompany your payment. Upon compliance with of all conditions of release specified in this letter, action will be taken to release the seized property.

This decision is effective for 30 days. Failure to comply within the stated time period will result in Customs proceeding with forfeiture in accordance with 19 USC 1607 and 19 CFR 162.45 by publication in the Savannah Morning News beginning on January 11, 2007.

Should further information be required, please contact Mary J. Pringle at 912-447-9435.

Sincerely,

Frank Jaramillo
Area Port Director

Enclosure

1 East Bay Street
Savannah, GA 31401



**U.S. Customs and
Border Protection**

**Customs and Border Protection Service
HOLD HARMLESS RELEASE AGREEMENT**

Customs Case Number: 2006-1703-000118-01
Property: 25 each diesel generators and parts
Released to: CHS Machine Shop

This Agreement is made between CHS Machine Shop and the Customs and Border Protection, Department of Homeland Security.

This Agreement is made in consideration of the return of the property described above which is the subject of Case Number shown above, and was seized for violation of title 19 USC 1595a(c)(2)(A), and 40 CFR Part 90.1003(a)(1)(i) and for other consideration, the receipt of which is hereby acknowledged.

In consideration of the release of the above listed property to the above named party, I, CHS Machine Shop, hereby release and forever discharge the United States, its officers, agents, servants, and employees, their heirs, successors, or assigns, from any and all action, suits, proceedings, debts, dues, contracts, judgments, damages, claims, and/or demands whatsoever in law or equity which I, my heirs, successors, or assigns, ever had, now have, or may have in the future in connection with the detention, seizure, and/or release by the Customs and Border Protection of the above listed property.

I, CHS Machine Shop, further agree to hold and save the United States, its officers, agents, servants and employees, their heirs, successors, or assigns, harmless from any claims by any others, including costs and expenses for or on account of any and all lawsuits or claims of any character for or on account of any and all lawsuits or claims of any character whatsoever in connection with the detention, seizure, and/or release by the Customs and Border Protection of the above listed property.

In addition, I agree to reimburse the United States, its employees, or agents from any necessary expenses, attorney's fees, or costs incurred in the enforcement of any part of this agreement within thirty (30) days after receiving written notice that the United States, its employees, or agents has incurred them.

By accepting this remission decision, petitioner understands that he is waiving any claim to attorney's fees, interest or any other relief not specifically provided for in this decision.

Name: _____
      (Print Name)

Signature*: _____
      (See asterisk below)

_____
Customs Officer (print name)

_____
Customs Officer (signature)

Address: _____

Date: _____

Subscribed before me:
this _____ day of _____

Notary Public (print name)_____
Notary Public (signature) _____
My Commission expires: _____

**\*Either a Customs Officer or a Notary must witness the signing of this document.**

# EXHIBIT E

CHS MACHINE
EMISSION CONTROL INFORMATION
ENG DIS _ 1.8L MAX BHP - 26HP/19.4KW
THIS ENGINE IS EXCLUDED FROM THE
REQUIREMENTS OF 40CFR1039 AS A
" STATIONARY ENGINE ". INSTALLING OR USING
THIS ENGINE IN ANY OTHER APPLICATION MAY
BE A VIOLATION OF FEDERAL LAW & SUBJECT
TO CIVIL PENALTY.


CHS MACHINE
EMISSION CONTROL INFORMATION
ENG DIS _ 1.8L MAX BHP - 26HP/19.4KW
THIS ENGINE IS EXCLUDED FROM THE
REQUIREMENTS OF 40CFR1039 AS A
" STATIONARY ENGINE ". INSTALLING OR USING
THIS ENGINE IN ANY OTHER APPLICATION MAY
BE A VIOLATION OF FEDERAL LAW & SUBJECT
TO CIVIL PENALTY.


CHS MACHINE
EMISSION CONTROL INFORMATION
ENG DIS _ 1.8L MAX BHP - 26HP/19.4KW
THIS ENGINE IS EXCLUDED FROM THE
REQUIREMENTS OF 40CFR1039 AS A
" STATIONARY ENGINE ". INSTALLING OR USING
THIS ENGINE IN ANY OTHER APPLICATION MAY
BE A VIOLATION OF FEDERAL LAW & SUBJECT
TO CIVIL PENALTY.

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

CHS INDUSTRIES, LLC

88888

**DEFENDANTS**

UNITED STATES CUSTOMS AND BORDER PROTECTION,
& UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
& UNKNOWN EMPLOYEES OF U.S. CUSTOMS AND BORDER PROTECTION,
& UNKNOWN EMPLOYEES OF U.S. ENVIRONMENTAL PROTECTION AGENCY.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Peter S. Herrick
Peter S. Herrick, P.A.
3520 Crystal View Court
Miami, FL 33133
Tel.: 305-858-2332

CASE NUMBER    1:06CV02205

JUDGE: Gladys Kessler

DECK TYPE: Administrative Agency Rev

DATE STAMP: 12/26/2006

## II. BASIS OF JURISDICTION
(PLACE an x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◎ 2 U.S. Government Defendant

○ 3 Federal Question
(U.S. Government Not a Party)

○ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

□ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

□ 310 Airplane
□ 315 Airplane Product Liability
□ 320 Assault, Libel & Slander
□ 330 Federal Employers Liability
□ 340 Marine
□ 345 Marine Product Liability
□ 350 Motor Vehicle
□ 355 Motor Vehicle Product Liability
□ 360 Other Personal Injury
□ 362 Medical Malpractice
□ 365 Product Liability
□ 368 Asbestos Product Liability

◎ **C. Administrative Agency Review**

□ 151 Medicare Act

**Social Security:**
□ 861 HIA ((1395ff)
□ 862 Black Lung (923)
□ 863 DIWC/DIWW (405(g)
□ 864 SSID Title XVI
□ 865 RSI (405(g)
**Other Statutes**
□ 891 Agricultural Acts
□ 892 Economic Stabilization Act
□ 893 Environmental Matters
□ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**    OR    ○ **F. Pro Se General Civil**

**Real Property**
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

**Personal Property**
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

**Bankruptcy**
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
□ 535 Death Penalty
□ 540 Mandamus & Other
□ 550 Civil Rights
□ 555 Prison Condition

**Property Rights**
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

**Federal Tax Suits**
□ 870 Taxes (US plaintiff or defendant
□ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

**Other Statutes**
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.
□ 460 Deportation

□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/ Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. Habeas Corpus/ 2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
5 U.S.C. §702, et seq - This Court may enforce the plaintiff's due process and property rights in the government's seizure of its goods.

| VII. REQUESTED IN COMPLAINT | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 □ | DEMAND $ _____ JURY DEMAND: | Check YES only if demanded in complaint YES □  NO □ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES □   NO ☒   If yes, please complete related case form.

DATE 12/21/2006   SIGNATURE OF ATTORNEY OF RECORD _____
26

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.