UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHS INDUSTRIES, LLC,                )
                                    )
            Plaintiff,              )
                                    )
v.                                  )   Civil Action No. 06-2205(GK)
                                    )
UNITED STATES CUSTOMS AND           )
BORDER PROTECTION, et. al.,         )
                                    )
            Defendants.             )
_____/

## PLAINTIFF'S MOTION OPPOSING DEFENDANTS' MOTION TO DISMISS

Plaintiff, by and through its undersigned counsel, pursuant to Local Rule 7(b), Rules of the U. S. District Court for the District of Columbia, respectfully opposes Defendants' Motion To Dismiss, and, states the following:

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 as the plaintiff has been deprived of its property without due process. Venue is proper in that all decisions made by the U. S. Customs and Border Protection and Environmental Protection Agency to seized plaintiff's merchandise and refuse its release were generated by the headquarters offices of these agencies in Washington, D.C. For the unnamed officers personal jurisdiction is not an issue. As to insufficiency of process as to the persons identified in the complaint their addresses

1

for service must be obtained through discovery. Rule 41(g) states a claim upon which relief may be granted.

As soon as defendants' dispositive motion is denied, plaintiff will begin discovery to obtain the necessary information to serve process on the identified federal officers. It is so clear that the defendants have deprived the plaintiff of its property without due process, and, it would frustrate the intent of the Constitution to dismiss this cause of action.

                                          Respectfully submitted,

                                          /s/_____
                                        PETER S. HERRICK, D.C. Bar # 137935
                                        Peter S. Herrick, P.A.
                                        3520 Crystal View Court
                                        Miami, Florida 33133
                                        Tel.:   305-858-2332
                                        Fax.:   305-858-6347
                                        Email: pherrick@bellsouth.net
                                        Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Plaintiff's Motion Opposing Defendant's Motion to Dismiss was sent by regular U.S. Mail to Jane M. Lyons, Esq., Assistant U.S. Attorney, 555 4th Street, N.W. - Room E4822, Washington, DC 20530 on April 16, 2007.

Peter S. Herrick

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHS INDUSTRIES, LLC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES CUSTOMS AND )<br>BORDER PROTECTION, *et. al.*, )<br>)<br>Defendants. )<br>_____/ | Civil Action No.: 06-2205 (GK) |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION OPPOSING DEFENDANTS' MOTION TO DISMISS

Plaintiff, CHS Industries, Inc. ["CHS"], by its undersigned attorney, respectfully opposes the Defendants', United States Customs and Border Protection, *et al.'s* ["Government"], Motion to Dismiss and provides the following points and authorities pursuant to Local Rule 7(b), Rules of the U.S. District Court for the District of Columbia.

### FACTS

CHS is an importer of stationary generators with non-road engines ["generators" or "seized generators"] located in Edgewater, Florida. On or about August 4, 2006, CHS imported 26 stationary generators from China. U.S. Customs & Border Protection ["Customs"] issued a notice of detention of the generators on or about August 21, 2006 awaiting the Environmental Protection Agency's ["EPA"] review.

EPA alleged an initial problem with its 3520-21 form. CHS had inadvertently entered the wrong date when signing the forms. CHS attempted to remedy the initial alleged

1

violation by submitting corrected forms.

During this time, Customs notified CHS that the wood shipping materials were not allowed entry into the United States. On or about September 27, 2006, CHS submitted an application to manipulate and export the noncompliant wood packing materials.

Customs seized CHS' goods on or about September 21, 2006 for an alleged violation of 40 C.F.R. §90.1003(a)(1)(i). CHS has previously imported the seized generators using the 3520-21 EPA forms for stationary engines. CHS had used several EPA label stickers detailing the stationary purpose of the engines. CHS exceeded the EPA's requirements with several printed warnings and attachments. In fact, CHS requires that their clients must execute a stationary warning form regarding the stationary purpose of the generators in order to obtain the warranty for the generator.

In fact, EPA recognized that CHS' goods are "non-road engines" pursuant to 40 C.F.R. §89.2 in its email from Alan Stout, the EPA's Office of Transportation and Air Quality to CHS, dated August 1, 2005. This email recognizes CHS' use of the referenced forms and stickers as a way of illustrating that the seized goods are non road engines. Therefore, EPA applied the wrong statute for its legal justification to seize the goods due to the fact that 40 C.F.R. §90.1003(a)(1)(I) does not apply to diesel engines.

CHS referred to Title 40 of the Code of Federal Regulations and the EPA's fact sheet entitled <u>EPA Technical Highlights, Emission Regulations for Stationary and Mobile Engines</u>, EPA 420-F-02-034, September, 2002 in order to comply with the government's importing requirements. As a direct result of this EPA regulations and references, the seized goods

were designed and placed on concrete pads to ensure that the goods stay stationary for the remainder of their usage and/or life of the goods.

CHS submitted its petition for relief to Customs on October 11, 2006. The government denied CHS' petition for relief on November 14, 2006 under the provisions of 40 C.F.R. §90.1003(a)(1)(ii) which differs from those violations alleged in ¶24 of the complaint. Customs and EPA would only permit CHS to export the generators out of the United States but would not permit entry into the United States even though CHS' labels are in complete compliance with the EPA's regulations.

## ARGUMENT

CHS' complaint contained the requisite information pursuant to Rule 8 (a), Federal Rules of Civil Procedure, which reads as follows:

> "A pleading which set forth a claim for relief . . ., shall contain:
> (1) a short and plain statement of the grounds upon which the court's Jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support,
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and
> (3) a demand for judgment for the relief the pleader seeks . . ."

CHS presented a detailed account of the background and facts of this case in ¶¶9-25 of the Complaint. CHS presented a detailed statement of the claim showing that it is entitled to relief as a result to the government's refusal to release the generators in ¶¶ 27 -45 of the Complaint.

CHS has pled with specificity and particularity to satisfy the Federal Rules. CHS pled in its complaint that it sought the governments' assistance prior to importing the generators.

CHS pled in its complaint that its labels do comply with the governments' regulations. CHS has pled that the government has continued to deny the generators entry into the United States.

The governments' arguments proceed from the incorrect premises that the Court does not have venue, personal jurisdiction and subject matter jurisdiction. Under these precedents, it is clear that both the delays and the denials to import the seized generators, that an "injury in fact" connects Washington, D.C. with the seized generators based on the ultimate review and /or decision on petitions for relief comes from the governments' headquarter offices which are located within Washington, D.C. Instead, the government contends that the injuries claimed do not meet the interrelated "causation" and " redressability"components of Article III standing, which require that "there be a causal connection between the injury and the conduct complained of" and that "it be likely … that the injury will be redressed by a favorable decision." Bennett v. Spear, 520 U.S. 154, 167 (1997). The governments' causation and redressability arguments rest on both an incorrect understanding of the injuries alleged in the Complaint and a misconstruction of the governing legal principles.

CHS has satisfied the three constitutional minimal elements of standing which are: "1) The plaintiff must have suffered an 'injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized , and (b) actual or imminent; 2) There must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant , and not . .. The result of the independent action of some third party not before the court; and, 3) It must be likely, as

opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992).

## I. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint in this case. Browning v. Clinton 292 F.3d 235, 242 (D.C. Cir. 2002). CHS' complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED R.CIV. P. 8(a)(2) and Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." Conley, 355 U.S. at 47-48 (internal quotation marks omitted).

It is not necessary for the plaintiff to plead all elements of its prima facie case in the complaint, Swierkiewicz v. Sonoma N.A., 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory." Krieger v. Fadely, 211 F.3d 134, 136 (D.C. Cir. 2000)(internal quotation marks and citation omitted).

Accordingly, "the accepted rule in every type of case" is that this Court should not dismiss a complaint for failure to state a claim unless the government can show beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. Warren v. District of Columbia, 353 F.3d 36, 37 (D.C. Cir. 2004); Kingman Park, 348 F.3d at 1040. Thus, in resolving a Rule 12(b)(6) motion, the court must treat the complaint's

factual allegations –including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. Macharia v. United States, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); Holy Land Found. for Relief & Development v. Ashcroft, 333 F.3d 156, 165 (D.C. Cir. 2003); Browning, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. Warren, 353 F.3d at 39; Browning, 292 F.3d at 242.

## II.     Sovereign Immunity Does Not Protect All Defendants

### A.     The Defendants Have No Immunity

The government in this case is not protected by sovereign immunity pursuant to the constitutional allegations made in the complaint. Federal employees, agents and officers performing their law enforcement functions have no immunity to protect themselves from damages suits charging violations of constitutional rights. Bivens v. Six Unknown Federal Agents, 456 F.2d 1339, 1341 (2nd Cir. 1972).

### B.     A Viable *Bivens* Claim Exists

CHS need not allege or show that the generators were unlawfully seized under Rule 41(g). The provision formerly was found in Rule 41(e). In 1989, Rule 41(e) was amended to read as follows: "A person aggrieved by an unlawful search and seizure or by the **deprivation of property** may move the district court for the district in which the property was seized." [emphasis added]

CHS alleges that the Court may exercise its equitable jurisdiction and issue an

equitable decision in this matter based on the governments' location within Washington, D.C. and the fact that ultimate review and /or decision on petitions for relief comes from the governments' headquarter offices which are located within Washington, D.C. See. Jim Floyd v. United States, 860 F.2d 999, 1003 (10th Cir. 1988); In re Harper, 835 F.2d 1273 (8th Cir. 1988); United States v. Martinson, 809 F.2d 1364 (9th Cir. 1987); Angel-Torres v. United States, 712 F.2d 717 (1st Cir. 1983); Hunsucker v. Phinney, 497 F.2d 29 (5th Cir. 1974); Smith v. Katzenbach, 351 F.2d 810 (D.C. Cir. 1965).

The Supreme Court has recognized that Rule 41(g) motions may exist apart from criminal actions. DiBella v. United States, 369 U.S. 121 (1962). The government in this case alleges that the judicial forfeiture proceedings should take precedent and this Court should have no jurisdiction. Although the government makes its jurisdictional argument based on administrative forfeiture proceedings remove the *res* from the district court and typically marks an end to the court's *in rem* jurisdiction, nevertheless, an exception to this general rule lies if the property is taken accidentally, fraudulent or **improperly**. See. Martin Onwubiko v. United States, 969 F.2d 1392, 1397 (2nd Cir. 1992); United States v. Ten Thousand Dollars ($10,000) in United States Currency, 860 F.2d 1511, 1513 (9th Cir. 1988).

The government is using the administrative forfeiture proceedings to attack the Rule 41(g) motion. The Court should enforce its equity jurisdiction for the *Bivens* claim based on generators being taken away improperly. Therefore, "the motion has invoked the court's equity jurisdiction, which, depending on the equities of the situation, may or may to be defeated by the subsequent initiation of administrative forfeiture proceedings." Leo

Mohammad v. Drug Enforcement Agency, 92 F.3d 648, 652 (8th Cir. 1996). The present Rule 41(g) motion may be considered a civil action based on the initial pleadings and motions being filed outside of any criminal proceedings. See. Leo Mohammad v. Drug Enforcement Agency, supra, p. 648.

### III.    Venue Is Proper In This District

CHS alleged that the government violated its Fifth Amendment Due Process rights because the government would not permit entry of its seized generators after it had provided assistance and information regarding the labeling procedure which was utilized by CHS. Title 42, Section 1983 of the United States Code provides a cause of action for constitutional violations that:

> "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizens of the United States, or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit inequity, or other proper proceeding for redress."

As previously mentioned, a pleading should not be dismissed for failure to state a claim unless it is beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [it] to relief. Warren, 353 F.3d at 37; Kingman Park, 348 F.3d at 1040. The government has not met this rigorous standard and this case does not warrant dismissal because CHS sufficiently pled that the governments' refusal to release the subject generators violated its rights and has caused it an injury in fact that may be redressed in the District of Columbia.

CHS did explain in its complaint how it relied upon the governments' initial recommendations, assistance and regulations in labeling its generators. The governments' subsequent conduct infringed CHS' due process rights by depriving it of its property because the government should have afforded CHS the opportunity to enter the generators or initiate its forfeiture proceedings expeditiously. Ultimately, the governments' headquarters would have issued the final decision for either situation.

## IV.   The Complaint States A Valid Claim

CHS' injuries are traceable to the governments' actions. Satisfaction of the causation component of Article III standing does not require establishing that the governments' complained-of actions are the very last step in the chain of causation of CHS' injuries. It is enough that the injuries be fairly traceable to the government's conduct. This requirement is satisfied where an action alters the legal regime to which the agency is subject and thus permits the injury to occur. The causation requirement is satisfied when the governments' actions authorizes the conduct that allegedly caused the CHS' injuries.

Under this standard, it is clear that CHS' injuries are "fairly traceable" to the government's decision. It is quite evident that by denying the entry of the seized generators, the government has caused the complained-of injury which is both concrete and actual. Defense Fund v. Glickman, 154 F.3d 426, 440 (D.C. Cir. 1998) (en banc). The principal injuries attributable to the governments' decision are described in ¶¶ 39 - 41 of the complaint.

The relief sought would redress the injuries alleged. To establish redressability, a plaintiff need show only a "substantial likelihood that their quested relief ... will redress the

alleged injury." <u>Department of Commerce v. House of Representatives</u>, 525 U.S. at 332. Relief that would direct an agency to take some action that it has unlawfully withheld to the plaintiff's detriment, or require the agency to cease some unlawful, injurious action, necessarily satisfies this requirement: "It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress." <u>Friends of the Earth, Inc. v. Laidlaw Environmental Services</u>, 528 U.S. 167, 185-86 (2000). Applying these standards, it is patently clear that the relief CHS seeks in this case would effectively redress its injuries to the extent that the governments' continued seizure of the generators would also continue CHS' injuries and continue its constitutional deprivation of its property.

### A.     The Defendants Have Not Proven That They Have Qualified Immunity

Courts have held that official immunity for executive officers is qualified and dependent upon the discretion and responsibility of the individual officer viewed in relation to the act in question. See. <u>States Marine Lines, Inc. v. George P. Shultz, et al.</u>, 498 F.2d 1146 ( 4th Cir. 1974). In this case, the government should have known that it was depriving CHS of its property and this deprivation would cause economic problems. Also, a reasonable person would infer that the government led CHS astray by providing improper assistance and recommendations prior to the attempted importation of the generators.

Accordingly, it is unreasonable for the government to assume that its conduct did not violate CHS' constitutional rights. CHS reasonably relied upon the governments' assistance.

CHS has demonstrated an injury consequent upon the governments' violations of its Fifth Amendment rights. Therefore, the Court must redress CHS' injury through its judicial procedures.

### B.     CHS Has Suffered a Due Process Violation

The government under its cloak of federal statutory authorization has deprived CHS of its property in violation of the Constitution resulting in considerable damages as a consequence. For example, the forfeiture statues require CHS to file a petition for relief to contest the forfeiture. CHS' petition for relief is to be reviewed by the government alone. Therefore, the government has the discretion to consider any factors alleged in the referenced petition for relief to permit release of the seized generators. Should the petition for relief prove inept, the government may keep the property or issue a decision, without ever having to justify or explain its actions. This discretion to consider other mitigating circumstances that may justify remission or mitigation is equitable in nature.

"Forfeitures are not favored; they should be enforced only when within both the letter and the spirit of the law." United States v. One Ford Coach, 307 U.S. 219, 226 (1939). Thus, the forfeiture statues and the alleged violations do not provide an adequate remedy at law for CHS' constitutional claims. "Because the courts have little authority to review the merits of an administrative forfeiture directly, it is all more important that the citizen be adequately apprised of exactly what he or she needs to do to regain his or her property." See. Leo Mohammad v. Drug Enforcement Agency, supra, p. 655. In this case, CHS has not been apprised of exactly what it needed to do at the inception of the importing procedure.

However, the Court may now exercise its equitable jurisdiction because the forfeiture has not been within both the spirit and letter of the law.

## V. Subject Matter and Personal Jurisdiction Exists Over the Three Identified Employees

### A. The Property Is Subject To Decisions Made At Customs' and EPA's Headquarters in Washington, D.C.

The Court may agree to personal jurisdiction of the defendants as all of the defendants have an enduring relationship in Washington, D.C. based on both Customs and EPA having their headquarters within Washington, D.C. For the most part, both agencies refer petitions for relief to their headquarters for review. Therefore, the government has a principal places of business in the District of Columbia which places the seized generators subject to its jurisdiction.

### B. The Court Has Personal Jurisdiction Over The Three Federal Employees Listed In The Complaint

As previously discussed, all of the defendants have an enduring relationship with the District of Columbia based on both Customs and EPA having their headquarters within the District of Columbia. For the most part, both agencies refer petitions for relief to their headquarters for review and decision. It would be inconvenient and unreasonable for CHS to have to bring individual lawsuits in both the States of Colorado and Georgia when all of the parties may be joined in one lawsuit within this District.

#### 1. The D.C. Long Arm Statute Does Reach the Three Federal Employees Located Outside Of Washington, D.C.

Also, the Court may grant jurisdiction pursuant to the District of Columbia's long arm

provision which grants personal jurisdiction for claims based upon conduct. See. <u>Dickson v. United States</u>, 729 F.2d 831, 897 (D.C. Cir. 1993). This statute provides personal jurisdiction over the government for claims arising from the persons transacting any business in the District of Columbia. As previously illustrated, the government maintains its headquarters in the District of Columbia. Both headquarters review and issue the ultimate decisions on petitions for relief in forfeiture cases.

### 2. Minimum Contacts Exist

There is ample basis for this Court to exercise its equitable jurisdiction based on the control that the government has over the seized generators. The government argues that the entire action should be dismissed even though it maintains possession of the seized generators, it refuses to release the seized generators for entry and the ultimate decision comes from the governments' headquarter offices.

### 3. Service of Process

CHS has sued the three unknown employees in their individual capacities. For unnamed offices their service of process is not an issue. Federal Rule of Civil Procedure Rule 4 (M) reads as follows:

> "If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1)."

CHS did not know and could not have known the individual information on the three unknown employees until any discovery has been completed. Therefore, CHS has good cause as to why service has not been affected as to the individual employees.

## CONCLUSION

CHS' complaint seeks recovery directly under the Constitution and its claims are wholly substantial. This Court and the Appellate Courts for this District have not granted motions to dismiss when plaintiffs have filed timely, well pled actions and presented it with a claim entitling it to relief.

As previously noted CHS' complaint and original claim contain the requisite information as required by the Federal Rules of Civil Procedure. Therefore, this Court should deny the Defendants' Motion to Dismiss.

Respectfully submitted,

/s/
PETER S. HERRICK, D.C. Bar # 137935
Peter S. Herrick, P.A.
3520 Crystal View Court
Miami, Florida 33133
Tel.:   305-858-2332
Fax.:   305-858-6347
Email:  pherrick@bellsouth.net
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the "Plaintiff's Memorandum of Points and Authorities in Support of Its Motion Opposing Defendants' Motion to Dismiss" was sent by regular U.S. Mail to Jane M. Lyons, Esq., Assistant U.S. Attorney, 555 4th Street, N.W. - Room E4822, Washington, DC 20530 on April 16, 2007.

Peter S. Herrick