UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHS INDUSTRIES, LLC, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>UNITED STATES CUSTOMS AND )<br>BORDER PROTECTION, *et al.*, )<br>)<br>Defendants. )<br>_____) | Civil Action No. 06-2205 (GK)<br>ECF |

**FEDERAL AGENCY DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS**

By largely failing to respond to most of the federal agency defendants' arguments and inappropriately mixing together other concepts, plaintiff's opposition fails to demonstrate any reason why defendants' motion should not be granted. For example, CHS declares that its complaint contains the short, plain statement required by Rule 8(a) of the Federal Rules of Civil Procedure, but defendants did not seek dismissal of this case under Rule 8, and so this portion of plaintiff's opposition is merely a strawman. Likewise, plaintiff's opposition invents an entirely new claim not found in the Complaint: one supposedly under 42 U.S.C. § 1983. Although plaintiff asserts that such a claim could make venue proper in D.C., its opposition fails to connect the claim to the venue issue. In any event, any claim grounded in 42 U.S.C. § 1983 is as untenable as those actually asserted in the Complaint.

Significantly, plaintiff does not contest that the property it seeks return of is not now and has never been located in D.C., and its desperate resort to the headquarters of

federal agencies being located here is patently insufficient. More importantly, plaintiff fails to respond to defendants' arguments on: (1) the absence of a valid waiver of sovereign immunity; (2) the impropriety of venue in the District of Columbia; (3) the presence of qualified immunity for any individual employees; and (4) the absence of personal jurisdiction over the individuals identified or referenced in the Complaint. Plaintiff's failure to respond to arguments contained in defendants' motion to dismiss concedes those points. E.g., Taylor v. FDIC, 132 F.3d 753, 763 (D.C. Cir. 1997) ("At oral argument, Pederson and Taylor's counsel explained that they did not respond to the FDIC's assertion because it was so ludicrous. Dignified silence is a dangerous tactic at best; here it proves fatal."); Stephenson v. Cox, 223 F. Supp.2d 119, 121 (D.D.C. 2002) ("when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").[1] With these matters uncontested, it is clear that defendants' motion to dismiss should be granted.

I.      **This Court Lacks Jurisdiction Over Plaintiff's Rule 41(g) Claim**

In the section of its Opposition that addresses its *Bivens* claim, CHS argues that this Court has jurisdiction over its Fed. R. Crim. P. 41(g) claim. See Pl.'s Opp. at 6-7. CHS contends that this Court may exercise jurisdiction over its Fed. R. Crim. P. 41(g) claim because "[t]he Supreme Court has recognized that Rule 41(g) motions may exist

---

[1] See also Hill v. Norfolk & Western Ry. Co., 814 F.2d 1192, 1198 (7th Cir. 1987) ("The ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless.").

apart from criminal actions." Id. at 7.  In support of this proposition, CHS cites the 1962 Supreme Court case of DiBella v. United States, 369 U.S. 121 (1962).  The question presented in DiBella was whether an order granting or denying a pretrial motion to suppress evidence in a federal criminal case was a final order that could be immediately appealed.  The Supreme Court did not even address whether a court could exercise jurisdiction in a civil case under Fed. R. Crim. P. 41(g) to resolve disputes regarding property that is subject to civil forfeiture proceedings.  Accordingly, DiBella is wholly inapplicable to the case at the bar.

CHS also relies on Muhammed v. Drug Enforcement Admin., 92 F.3d 648 (8th Cir. 1996), as persuasive authority for jurisdiction under Fed. R. Crim P 41(g).  The Court should quickly reject this argument because the Muhammed case is factually distinguishable from this case and because the D.C. Circuit has directly addressed the jurisdictional question presented in this case and concluded that the District Court should not exercise jurisdiction over Fed. R. Crim. P. 41(g) claims when the government has initiated an administrative forfeiture proceeding.  In the Muhammed case, the Eighth Circuit reversed a dismissal of Fed. R. Crim. P. 41(g) claim where it noted that the Muhammeds were confused about the forfeiture proceedings and ultimately held that "the administrative forfeiture was void because of the inadequate notice given to the Muhammeds" Id. at 654.  In the case at bar, there is no allegation of any deficiency with notice or any other procedural defects regarding the implementation of the administrative forfeiture proceeding.  Furthermore, CHS cannot reasonably be heard to

claim that it was confused about the appropriate forfeiture procedures in this case since it was represented by counsel who submitted a detailed application for relief to Customs. Complaint, ¶17.

Regardless of the Eighth Circuit's ruling in Muhammed, however, the D.C. Circuit Court has specifically rejected the existence of jurisdiction over Fed. R. Crim. P. 41(g) claims for property that is subject to civil administrative forfeiture proceedings. In United States v. Price, 914 F.2d 1507, 1511 (D.C. Cir. 1990), the D.C. Circuit Court held that Fed. R. Crim P 41(g) does not encompass property the government has forfeited through administrative procedures. The Court held that "once the Government initiates an administrative forfeiture proceeding and the property is not the subject of an ongoing criminal proceeding, the District Court has no jurisdiction to resolve the issue of return of property." Id. at 1508. Despite defendants' reliance on Price in its motion, plaintiff's opposition is silent regarding its application here.

Since the government has initiated an administrative forfeiture proceedings relating to the property at issue in this case, this Court does not have jurisdiction over CHS's claim under Fed. R. Crim. P. 41(g).

II.     **Plaintiff Has Failed to State a Valid Bivens Claim**

The Federal Defendants' Motion to Dismiss demonstrated that CHS has failed to state a valid claim under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971), because the exclusive statutory and regulatory scheme governing seizures and forfeiture by Customs is a

"special factor counseling hesitation in the absence of affirmative action by Congress." Id. at 396.  CHS's Opposition Memorandum provides no valid reason for this Court to create or recognize a *Bivens* cause of action for any alleged due process violations arising from the seizure of the non-road engines at issue in this case.

The Supreme Court has "responded cautiously to suggestions that *Bivens* remedies be extended into new contexts."  Schweiker v. Chilicky, 487 U.S. 412, 421 (1988).  In fact, the Supreme Court has held that there should be no *Bivens* remedy in a situation where federal legislation had already established "an elaborate remedial system that had been constructed step by step, with careful attention to conflicting policy considerations."  Bush v. Lucas, 462 U.S. 367, 388 (1983).

As more fully set forth in the Federal Defendants' Motion to Dismiss, the exclusive statutory and regulatory system for addressing seizures and forfeiture by Customs is set forth at 19 U.S.C. § 1602 et. seq.  In this case, plaintiff actually availed itself of the CBP administrative process by filing a petition pursuant to 19 U.S.C. § 1618.  Plaintiff's petition was granted, in part, by allowing plaintiff to retain its right, title, and interest in the generators at issue, but requiring that the generators be exported from the United States.  If plaintiff was dissatisfied with the administrative decision of CBP, it could have filed a bond, pursuant to 19 U.S.C. § 1608 and have the matter referred to the office of the United States Attorney in Georgia where the property had been seized, for the institution of judicial forfeiture proceedings.  In essence, plaintiff is improperly asking this Court to grant additional judicial review (i.e. beyond that which is available

in the district where the property is located under the laws governing forfeitures) of an administrative decision on its petition. This Court lacks such jurisdiction. See United States v. In Re One 1987 Jeep Wrangler Automobile, 972 F.2d 472 (2d Cir. 1992) (overwhelming weight of authority supports the position that a federal court lacks jurisdiction to review the merits of administrative forfeiture decisions once the administrative process has begun).

CHS's opposition provides no explanation regarding why this Court should create a *Bivens* action as an alternative to the existing comprehensive statutory and regulatory mechanism for challenging seizures and forfeitures. Instead, CHS seems to imply that Rule 41(g) of the Criminal Rules of Civil Procedure somehow creates a *Bivens* action. See Pl.'s Opp. at 6. The Court should reject this argument. The Supreme Court has clearly articulated the appropriate approach for evaluating whether or not a court should allow a *Bivens* action to proceed in the Bush and Chilicky cases. It is clear that the reasoning of Bush and Chilicky also apply in the context of seizures and forfeiture by Customs, and compels the conclusion that no *Bivens* remedy should be recognized for suits against federal employees that are simply implementing the applicable seizure and forfeiture statutes and regulations. Plaintiff's mere disagreement with the administrative decision is hardly sufficient to justify creation of a damages remedy.

In Siaca v. United States, 754 F.2d 988 (D.C. Cir. 1985), the D.C. Circuit compared the remedial system at issue in the Bush case with the comprehensive remedial

mechanism that Congress created to address the rights of people whose property has been seized by Customs. The <u>Siaca</u> Court held:

> Congress has dealt even longer with Customs since the first thing Congress did when it convened in 1789 was to pass a Tariff Act. Existing law contains elaborate and carefully articulated provisions dealing with the rights of persons whose property has been seized, possibly illegally. It cannot be said that these provisions were inadequate for the plaintiff's case. Assuming as we must and do, for purposes of our decision, that he was intimidated or bamboozled by the customs agent, the law would have been adequate and he could have had an administrative or judicial review or both. . . . Under these circumstances, we cannot say that a gap exists in the law which the courts are needed to fill.

<u>Id</u>. at 992 (rejecting tort and claims founded in equity).

In the instant case, there is no hint or suggestion that CHS was intimidated or bamboozled by any federal employee, and the existing procedural mechanisms set forth in Customs laws provided CHS with specific and meaningful remedies that give CHS more than adequate opportunities for both administrative and judicial review of the government's decision. Because Congress has fashioned a comprehensive scheme of review for seizures and forfeitures, CHS should not be able to bypass the express remedies or sidestep limitations deliberately crafted by Congress within this comprehensive scheme of review of governmental seizures and forfeitures by Customs. This Court should decline to recognize a *Bivens* remedy against federal employees who are simply implementing the statutory procedures created by Congress. Regardless of the completeness of the remedy from CHS' perspective where Congress gives what it considered appropriate attention to alleged unlawful agency action, federal courts are

not free to supplement the remedies of the relevant statute with a judicially created *Bivens* remedy.

### III. Improper Venue

In analyzing the venue issue, CHS makes an argument that venue is proper under 42 U.S.C. §1983. This is particularly novel because no such claim exists in the Complaint, and CHS may not amend its pleading in its opposition to a motion to dismiss.[2] Even so, it is impossible for any valid claim to exist here under 42 U.S.C. § 1983 because a § 1983 violation must be based upon "the deprivation of constitutional rights by a person acting under color of law of any state or the District of Columbia. Section 1983 only applies to state officials acting under color of state law." Abramson v. Bennett, 707 F. Supp. 13, 16 (D.D.C.), aff'd 809 F.2d 291 (D.C. Cir. 1989) (and cases cited therein). Plaintiff, however, has alleged clearly that all of the individual defendants were acting in their official capacities as federal employees, and not under color of state law. See Complaint, ¶ 8 ("At all times relevant to the events described herein, all the defendants have acted under color of <u>federal</u> law and continue to act under <u>federal</u>

---

[2] '[I]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.' To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief.

Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); accord, e.g., Payne v. Ryder Sys. Inc. Long-Term Disability Plan, 173 F.R.D. 537, 540 (M.D. Fla. 1997) ("plaintiff cannot amend a complaint through statements in a brief.").

law.") (emphasis supplied).  The D. C. Circuit has also concluded that a federal agency is not a person for purposes of Section 1983 liability.  <u>Settles v. U.S. Parole Comm'n</u>, 429 F.3d 1098, 1105-06 (D.C. Cir. 2005).  Thus, plaintiff has failed to assert a claim under section 1983 upon which relief can be granted, and there is no need for the Court to determine whether venue could somehow be proper in D.C. for a section 1983 claim.

Plaintiff's only genuine argument with respect to venue is that the government agencies are headquartered in D.C. and that the ultimate decision regarding the generators must have been made there.  The property being located in Georgia and the identified employees being located in Georgia and Colorado sharply undermine that assertion.  In general, "[c]ourts in this circuit must examine the challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia."  <u>Cameron v. Thornburg</u>,  983 F.2d 253, 256 (D.C. Cir. 1993).  As to the individuals identified, venue is plainly inappropriate because, as the Complaint alleges and plaintiff does not dispute in its opposition, none of them are located here.

As to the federal agency-defendants, although CHS speculates that agency decision-making happened in D.C., the attachments to the Complaint show that Customs' decision came from the Port Director in Georgia, and not from a headquarters office in D.C.  But even if the ultimate responsibility for a decision involving the events in the Complaint were made in D.C., "a district court may transfer any civil action to

any other district or division where it might have been brought . . . [f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

In this case, there can be no real question that this case "might have been brought" in Georgia where plaintiff alleges that its property was detained (Complaint, ¶¶ 13-14) and seized (Complaint, ¶ 18), and plaintiff submitted an application relating to the property (Complaint, ¶ )) & Exhibit B).[3] CHS's application, dated October 11, 2006, is clearly directed to an address in Savannah, Georgia. Id.; see 28 U.S.C. § 1391(e)(2). Rule 41(g) of the Federal Rules of Criminal Procedure, on which plaintiff relies, requires that judicial review be obtained in the district where the property is located. As pleaded, the District of Columbia has no connection to the facts of this case, see Kirby v. Mercury Savs. & Loan Ass'n., 755 F.Supp. 445, 448 (D.D.C. 1990) (transferring a case *sua sponte* which had "virtually nothing to do with th[e] jurisdiction"), while Georgia has every connection to it because that is where the property is located. Considerations of convenience and justice, therefore, would both

---

[3] The location or admission of plaintiff's counsel to a Court are also not factors in the venue analysis because they are not identified by any of the venue statutes as a basis for venue. If the Court considers transfer as an alternative to dismissal, which defendants respectfully submit it should not in light of the clearly untenable nature of the claims presented, defendants note that the improper venue statute in 28 U.S.C. § 1406(a) is not the only basis upon which this case may be transferred. Congress has also provided that transfer is appropriate when (1) there is another judicial district in which the action properly may have been brought; (2) the convenience of the parties and witnesses would be better served in the alternative district; and (3) transfer is in the interest of justice. 28 U.S.C. § 1404(a); see Claasen v. Brown, Civil Action No. 94-1018, 1996 WL 79490, at *5-6 (D.D.C. Feb. 16, 1996). Defendants further note that Savannah is located within the Southern District of Georgia.

militate in favor of transfer if this entire case is not dismissed outright for improper venue.

### IV.    The Federal Employees are Entitled to Qualified Immunity

This case should also be dismissed as a matter of law under the qualified immunity doctrine. The qualified immunity doctrine was formulated to allow government officials the necessary latitude to vigorously exercise their authority without the chill and distraction of damages suits. It accomplishes that aim by broadly protecting government officials from personal liability litigation for conduct performed in their jobs except in egregious instances when they engage in actions that plainly infringe settled rights. Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982).

A plaintiff seeking an exception to the qualified immunity doctrine bears a "heavy burden" because "the doctrine of qualified immunity reflects a balance that has been struck 'across the board,' " Anderson, 483 U.S. at 642 (citation omitted). CHS has not met that burden here. To overcome qualified immunity, a plaintiff must demonstrate that (1) a constitutional right was violated; and (2) assuming the violation is established, that the right alleged to have been violated was clearly established such that a reasonable person would have known of its existence. Saucier v. Katz, 533 U.S. 194, at 196.

CHS's complaint and Opposition fail to allege facts that are sufficient to defeat a qualified immunity defense and provide no valid legal arguments to overcome the Federal employee's qualified immunity defense. In order to survive a motion to

dismiss, "the complaint must set forth sufficient information to suggest that there exists some recognized legal theory upon which relief can be granted." <u>Gregg v. Barrett</u>, 771 F.2d 539, 547 (D.C. Cir. 1985), quoting <u>District of Columbia v. Air Florida, Inc.</u>, 750 F.2d 1077, 1081 (D.C. Cir. 1984). The D.C. Circuit has insisted that "[a]t the first stage of the inquiry, 'courts must not define the relevant constitutional right in overly general terms, lest they strip the qualified immunity defense of all meaning.'" <u>Int'l Action Ctr. v. United States</u>, 365 F. 3d 20, 25 (D.C. Cir. 2004) (quoting <u>Butera v. District of Columbia</u>, 235 F.3d 637, 646 (D.C. Cir. 2001). Although CHS claims that it has suffered a due process violation, it only defines its due process right in overly general terms and asserts no facts or valid legal theories to support a violation of its constitutional right. As the D.C. Circuit noted in <u>Haynesworth v. Miller</u>, 820 F.2d. 1245, 1254 (D.C. Cir. 1987), "A plaintiff's bare conclusion of law . . . will not be deemed admitted" for the purpose of a motion to dismiss under Rule 12(b)(6)."

     As more fully set forth above and in the Federal Agency Defendants' Motion to Dismiss, the comprehensive seizure and forfeiture procedures administered by Customs provided CHS with sufficient due process. CHS alleges no intentional or reckless behavior by any federal employee, nor does it allege bad faith. Although the Federal Defendants deny that any federal employee acted improperly in this case, the Supreme Court has made it clear that a mere lack of due care or negligence cannot

sustain a claim that an individual was deprived of due process.  See Daniels v. Williams, 474 U.S. 327, 330-31 (1986).[4]

    Even if the CHS did assert a valid due process violation, qualified immunity still applies because CHS failed to alleged that any federal employee violated a clearly established constitutional right of which a reasonable person would have known.  CHS can point to no binding Supreme Court or D.C. Circuit precedent or caselaw among the circuits where the "contours of the rights" at issue in this case were settled or clearly established.  Butera, 235 F. 3d at 653.  Likewise, CHS can point to no precedent that clearly addresses this particular situation. Although CHS may disagree with the government's decision in this case, in order to survive a motion to dismiss, a plaintiff must allege that a federal employee violated a clearly established constitutional right of

---

[4] The federal employees involved in this case correctly concluded that the engines cannot be legally admitted into the United States because they were diesel powered "nonroad engines" that were not certified by EPA.  See Complaint, Exhibit C. 40 C.F.R. § 89.1003(a)(1)(ii) prohibits any person from importing any diesel nonroad engine unless it is covered by a valid Certificate of Conformity.  In its Opposition Memorandum, CHS itself refers to the engines as "non-road engines."  Pl.'s Opp. at 6. This is tantamount to an admission that the generators cannot be legally imported.  The fact that CBP cited the analogous provisions in 40 C.F.R. Part 90 is irrelevant to this analysis.  Part 89 addresses diesel engines and Part 90 addresses gasoline engines.  Both parts of the regulations contain similar prohibitions against the importation of uncertified engines.  Plaintiff's assertion that it was somehow led astray by an attached email from an unidentified EPA employee is also misleading and irrelevant because the facts portrayed in the incoming e-mail are materially different from the allegations in this case.  Moreover, because plaintiff submitted an incomplete version of the e-mail, by omitting the question to which this email responded, in its attachment, the Court should disregard it.  See Fed. R. Evid. 106.  Regardless of the content of this email, "an isolated opinion of an agency official does not authorize a court to read a regulation inconsistently with its language." Environmental Defense v. Duke Energy Corp., ___ U.S. ___, 127 S. Ct. 1423, 1436 (2007).

which a reasonable person would have known.  The critical question is whether defendant's actions were objectively reasonable.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  CHS makes no allegation whatsoever that any federal employee involved in this matter did not reasonably believe that their actions were lawful.

In fact, CHS's complaint demonstrates that the actions of the federal employees in this case are entitled to qualified immunity because they reasonably believed that they were consistent with the law.  The letter from EPA that is attached to CHS's complaint as Exhibit C outlines the rationale for the actions that the employees took in the course of their employment and demonstrates the reasonableness of their actions.  The federal employees involved in this case reached a reasoned and rational conclusion that the engines at issue in this case were mobile source engines that were not properly certified.  Furthermore, the employees concluded that even if CHS's assertion that the engines were not subject to the mobile source certification requirements was correct, the engines were not compliant because they were not properly labeled.

Because the allegations show that the agencies and their employees acted reasonably in carrying out their duties and afforded CHS considerable process, the employees are entitled to qualified immunity from suit for their actions.

## V.      Subject Matter and Personal Jurisdiction

### A.      Subject Matter Jurisdiction is Distinct From Personal Jurisdiction

Plaintiff argues that the property is subject to decisions made at Customs' and EPA's Headquarters in Washington, D.C.  This argument misses the point.  The

property which is the subject of this action is now, and at all times relevant to this action, has been located in Georgia. Where the defendants reside is relevant primarily for personal jurisdiction.

Plaintiff's opposition omits any discussion of subject matter jurisdiction. While mouthing the words, plaintiff merely contends that the government has a principal place of business in D.C. and the seized generators are subject to its jurisdiction.

### B.     Plaintiff's Speculation Cannot Create Personal Jurisdiction

Plaintiff further argues that the Court has personal jurisdiction over the three federal employees listed in the Complaint. Plaintiff grounds this argument on speculation that the response to its petition for relief was referred to a headquarters office in D.C. for review and decision. See Pl.'s Opp. at 4. Plaintiff also argues that it is inconvenient and unreasonable for CHS to bring lawsuits in both Colorado and Georgia when all parties can be joined in D.C., but fails to explain why this lawsuit could not be brought in Georgia against all or nearly all defendants.

Contrary to plaintiff's suggestion, D.C.'s Long Arm Statute does not reach the three Federal Employees located outside of D.C. CHS relies on the ties between the defendants and the headquarters review and issuance of ultimate decision on petitions for relief in forfeiture cases to satisfy the requirement for the D.C. Long Arm statute. Under its *Bivens* theory, plaintiff is seeking monetary damages from individuals. Although the employees work for the federal government, that fact is insufficient to create a relationship between them in their individual capacities and D.C. because they

have no personal connection to and do not reside in D.C.  Plaintiff provides no allegations that any significant government actions occurred in Washington, and the materials attached to the Complaint all point to substantial activities outside of Washington.

In addition, plaintiff cannot show that any individual federal employees identified in the Complaint have the required minimum contacts.  CHS argues that the government, which is headquartered in D.C., has ultimate control over the seized generators thereby creating the minimum contacts for personal jurisdiction.  Importantly, however, plaintiff includes no discussion of where the individual employees reside and do not dispute that the seized property has never been located in D.C.

    **C.**    **No Service of Process**

The 120-day time period for perfecting service under Rule 4 is expiring on the same day this reply brief is being filed.  Plaintiff's opposition candidly admits that service has not been made on any individual.  See Pl.'s Opp. at 14.  Although the Court has the discretion to extend the time for service, it may do so only for good cause shown.  See Fed. R. Civ. P. 4(m); Whitehead v. CBS/Viacom, Inc., 221 F.R.D. 1, 3 (D.D.C. 2004) (plaintiff bears burden of demonstrating good cause for failure to serve process in a timely manner).  CHS argues that it needs discovery to be able to identify the three unknown employees whom plaintiff claims are liable in their individual capacities.  See Pl.'s Opp. at 13-14.  Although plaintiff contends that its untimely service

should be excused because CHS does not know who the employees are, CHS has already identified particular individuals in their Complaint (¶¶ 5-7), and cannot now argue they are unsure who those individuals are.[5]

Perhaps more notably, plaintiff has not moved to extend the time for service of process on any individual federal employees.  Under these circumstances, where plaintiff has been in possession of business addresses for the identified employees since before filing this action and has apparently taken no steps to serve them or to extend the time to serve them, and even more importantly, where plaintiff has failed to state any valid claim against any individual, the time limit should not be extended.

---

[5] It is well-established that, in an action against a federal employee in his or her individual capacity, each individually-sued defendant must be served with process in accordance with Rule 4(e), which requires that a copy of a summons and complaint be delivered to the defendant (or his appointed agent) personally, or be left "at his dwelling house or usual place of abode with some person of suitable age and discretion" who resides there.  Service on the United States Attorney in the district where the action was brought pursuant "does not obviate the requirement of personal service under Fed. R. Civ. P. 4(d)(1) where the action is in substance against a federal official in his individual capacity."  See Lawrence v. Acree, 79 F.R.D. 669, 670 (D.D.C. 1978).  Here, plaintiff's opposition appears to concede that none of the defendants were either personally served or served at their homes.  Actual notice does not substitute for technically proper service under Rule 4 and will not permit the Court to render a personal judgment against an individually-named defendant.  See Sieg v. Karnes, 693 F.2d 803 (8th Cir. 1982); see also Stafford v. Briggs, 444 U.S. 527 (1980).  The service of process thus being defective as to any individual employees in their individual capacities, this action cannot proceed against them personally.  Micklaus v. Carlson, 632 F.2d 227, 240 (3rd Cir. 1980); Griffith v. Nixon, 518 F.2d 1195, 1196 (2d Cir. 1985), cert. denied, 423 U.S. 995 (1975).  Plaintiff's knowledge of their business addresses provides information relevant to where such employees are likely to reside, yet plaintiff's Opposition indicates that it has not undertaken any reasonable efforts to serve any individuals.

## Conclusion

For all these reasons, and those outlined in the motion to dismiss, this case should be dismissed in its entirety.

Dated: April 26, 2007.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


/s/_____
JANE M. LYONS, D.C. BAR # 451737
Assistant United States Attorney
555 4th St., N.W. - Room E4822
Washington, D.C.  20530
(202) 514-7161