UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHS INDUSTRIES, LLC,         ) | |
| ) | |
| Plaintiff,         ) | |
| v.         ) | Civil Action No. 06-2205 (GK) |
| ) | ECF |
| UNITED STATES CUSTOMS AND   ) | |
| BORDER PROTECTION, *et al.*, ) | |
| ) | |
| Defendants.         ) | |
| _____) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR AN ORDER TO SHOW CAUSE**

Plaintiff has moved the Court to issue an order to show cause why defendants should not be held in contempt for selling the diesel generators seized over a year ago at the Port of Savannah, Georgia and administratively forfeited in April, 2007 in Georgia. Plaintiff's motion should be denied for at least three reasons. First, and most importantly, there is no basis for contempt of any kind because defendants are not in violation of any Court order. Second, as explained in the attached Declaration of Mary Bensel-Mills, plaintiff had specific prior notice of the government's intent to forfeit the property and should not be heard after-the-fact to complain about the Customs Service doing exactly what it told plaintiff it was going to do. And third, selling the asset represented an appropriate conservation of its value because accumulating storage costs and ordinary depreciation threatened to consume it entirely. If this case is not dismissed, as defendants have requested, and the Court enters any relief for plaintiff, the proceeds of the sale, which amount to the substitute value of the generators, will be available in the United States Treasury Forfeiture Account.

**ARGUMENT**

Because the contempt power is to be reserved for only intolerable violations of the Court's authority, the burden of demonstrating conduct warranting its use is a heavy one. Washington-Baltimore Newspaper Guild v. The Washington Post, 626 F.2d 1029, 1031 (D.C. Cir. 1980). Here, because plaintiff outright concedes that "there is no court order at issue [which plaintiff contends has been violated]" (Pl.'s Motion, at 2), contempt is simply inappropriate. Without a clear and unambiguous court order allegedly violated, there can be no finding of either civil or criminal contempt. See Armstrong v. Executive Office of the President, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (civil); Traub v. United States, 232 F.2d 43, 47 (D.C. Cir. 1955) (criminal). Here, the property at issue was never within the District of Columbia. See 28 U.S.C. § 1391(e) (limiting proper venue to places where defendants reside or where substantial portion of act or event took place); cf. United States v. United Mine Workers of Am., 330 U.S. 258, 293 (1947) (a court must have jurisdiction to require compliance with an injunctive order).[1]

---

[1] Contrary to the suggestion in plaintiff's motion, the generators were not sold by the port director, but rather by other personnel employed by the U.S. Customs and Border Protection. See Bensel-Mills Dec. ¶ 1 & & Exhibit B. In any event, when high government officials are the target of contempt proceedings, the remedy must be reserved as a "last resort." In re Attorney General of the U.S., 596 F.2d 58 (2d Cir.), cert. denied, 444 U.S. 903 (1979); see Shepherd v. American Broadcasting Cos., Inc., 62 F.3d 1469 (D.C. Cir. 1995) (noting the Supreme Court's admonishment that "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion. . . . The Court has also cautioned restraint in the use of inherent powers "[b]ecause of their very potency.") (citations omitted).

Moreover, although there is no doubt that the Court possesses inherent powers to control its proceedings, Webb v. District of Columbia, 146 F.3d 964, 971 (D.C. Cir. 1998), plaintiff's notion that it has been deprived of anything improperly or without procedure is fundamentally flawed. Plaintiff has had abundant opportunity to contest the forfeiture of the generators but has consistently declined to do so in the available forum, instead opting to file this case in a jurisdiction several hundred miles from the seizure and under improper and inapplicable theories.[2] Most significantly for purposes of the instant motion, however, plaintiff had specific notice not only of the forfeiture and how to contest it but also of the impending sale. Plaintiff's attorney was notified by letter dated November 14, 2006 that the generators had been seized and could be exported to a location outside of North America upon satisfaction of certain conditions. See Declaration of Mary Bensel-Mills ("Bensel-Mills Dec."), ¶ 3 & Exhibit A. In that same letter, Customs and Border Protection ("CBP") informed plaintiff's counsel that forfeiture would be accomplished after publication of a notice in the *Savannah Morning News* beginning on January 11, 2007. See id. ¶ 4. In fact, a notice of intent to forfeit the generators was placed in the *Savannah Morning News* on January 11, 18, and 25, 2007. See id. & Exhibit B.

---

[2] Plaintiff's complaint is grounded on Rule 41(g) of the Federal Rules of Criminal Procedure, which plainly do not apply because the generators were subject to civil forfeiture. See Fed. R. Crim. P. 1(a)(5)(B). Plaintiff's alternative claim is for damages under Bivens v. Six Unknown Federal Agents, 403 U.S. 388 (1971). The reasons why plaintiff's claims are without merit are the subject of defendants' pending motion to dismiss. See Docket Entry No. 7.

Notwithstanding the evolution of events just as CBP informed plaintiff's counsel they would, plaintiff failed to object in any way or to file any type of claim relating to the generators. Plaintiff also failed to come into this Court to request any injunctive relief. Anytime after the seizure, plaintiff could have filed a claim and cost bond, and had the matter of the compliance of the generators with U.S. environmental laws raised in a judicial forfeiture proceeding in the United States District Court for the Southern District of Georgia. See id. ¶ 5; 19 U.S.C. § 1608. Plaintiff failed to do so. See Bensel-Mills Dec. ¶ 5. By allowing the Government to proceed to sell the generators when plaintiff's counsel had full knowledge of exactly what would happen and when and how it would take place, and then complaining about it only after the fact, plaintiff now seeks to play a game of "gotcha." See Link v. Wabash R.R., 370 U.S. 626, 633-34 (1962) (party and counsel are each bound by the other's actions). The Court should decline to be the referee because "'a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.'" U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 115 S. Ct. 386, 392 (1994) (quoting Sanders v. United States, 373 U.S. 1, 17 (1963)).

This case is easily distinguished from the only case plaintiff cites, Luis Gines-Perez v. Raymond W. Kelly, 333 F.3d 313 (1st Cir. 2003), because here, the Government reached a final decision on the forfeiture of the generators. In any event, selling the generators preserves their value while the Court resolves this case. Cf. United States v. One Parcel of Real Property Described as Lot 41, Berryhill Farm, 128 F.3d 1386 (10th Cir. 1997) (sale of residence while civil forfeiture case was stayed pending criminal trial avoided waste and

expense and allowed the Government to satisfy the mortgage that defendant had stopped paying). If the Court ultimately awards plaintiff any relief, more will be available in the future with the substitute value placed in a suspense account within the Treasury Forfeiture Fund than if the generators continued to accumulate storage and other costs and deteriorate. See Bensel-Mills Dec. ¶¶ 9-10.

## CONCLUSION

For all these reasons, defendants respectfully request that the Court deny plaintiff's motion for an order to show cause.

Dated: October 2, 2007.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


/s/
JANE M. LYONS, D.C. BAR # 451737
Assistant United States Attorney
555 4th St., N.W. - Room E4822
Washington, D.C.  20530
(202) 514-7161

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHS INDUSTRIES, LLC, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> UNITED STATES CUSTOMS AND ) <br> BORDER PROTECTION, et al., ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Action No. 06-2205 (GK) <br> ECF |

DECLARATION OF MARY BENSEL-MILLS

I, Mary Bensel-Mills, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, the following:

1. I am the Fines, Penalties, and Forfeitures Officer for the port of Savannah, Georgia, U.S. Customs and Border Protection (CBP). I have been in this position since 1983 and during this time I have been responsible to adjudicate cases made by the agency, as well as asset management and disposition.

2. I am familiar with the events described below in my capacity as described in paragraph 1. The statements in this declaration are based on my personal knowledge or on information gathered in the performance of my official duties.

3. The importer of the 25 diesel generators and parts seized on September 21, 2006 at the Port of Savannah, Georgia ("goods") was notified by a letter dated November 14, 2006 to its attorney, Peter S. Herrick, that its October 11 and 20, 2006 administrative petitions for relief from forfeiture of the goods were granted, but that the good were inadmissible into the United States. A copy of that letter is attached as Exhibit A. In addition, CBP notified Mr. Herrick that the goods would be administratively forfeited if the importer failed to take appropriate action within 30 days of that notification. See id.

4. The importer was offered the opportunity to re-take possession of the goods and export them, pay a fine equal to 10% of the imported value of the goods, and pay the storage charges. See id. In addition, CHS's attorney was notified in the same November 14, 2006 letter that failure to pay within 30 days would "result in Customs proceeding with forfeiture . . . by publication in the

Savannah Morning News beginning on January 11, 2007." Id. at 2. Pursuant to my request, a "Notice of Seizure and Intent to Forfeit" the 25 generators seized on September 21, 2006 and assigned Seizure Case No. 2006-1703-000118-01 was posted in the Savannah Morning News on January 11, 18, and 25, 2007. A copy of the Notice is attached as Exhibit B.

5. The importer could have at any time after the seizure of the goods filed a claim and cost bond pursuant to 19 U.S.C. § 1608 and had the matter referred to the U.S. Attorney's Office for the Southern District of Georgia for judicial forfeiture. I am not aware of any such claim or bond being posted by the importer of these goods.

6. The goods placed under seizure in this matter by CBP in September, 2006 were sold by CBP in Savannah, Georgia on June 13, 2007 after being administratively forfeited by operation of law in April, 2007.

7. CBP sold the seized goods pursuant to 19 U.S.C. § 1612, as they were accumulating storage charges (over $5,500 by April 1, 2007) and were a wasting asset subject to rusting and deterioration, such that the expense of keeping the goods was disproportionate to the value thereof.

8. The goods were sold for "export only" because they were determined to be inadmissible into the United States and were in fact exported from the United States after sale.

9. The proceeds of the forfeited goods ($28,000) were initially deposited into the Treasury Forfeiture Fund.

10. Said proceeds are now in the process of being deposited into a suspense account pending the outcome of this litigation. Placing the funds in a suspense account will ensure they are more readily available as a substitute asset in a judicial forfeiture proceeding.

*[signature]*
Mary Bensel-Mills
Fines, Penalties, and Forfeitures Officers
U.S. Customs and Border Protection
Savannah, Georgia

1 East Bay Street
Savannah, GA 31401



U.S. Customs and
Border Protection

NOV 1 4 2006        ENF-4-SV:F:MJP

Mr. Peter S. Herrick
3520 Crystal View Court
Miami, Florida 33133

Re:   Case Number 2006-1703-000118-01
      Importer - CHS Machine Shop

Dear Mr. Herrick:

This is in response to the petitions dated October 11, 2006, and October 20, 2006, seeking relief from forfeiture in connection with the above-referenced case involving the seizure of 25 diesel generators and parts. The property was seized on September 21, 2006 under the provisions of 19 USC 1595a(c)(2)(A) and 40 CFR 90.1003(a)(1)(i) because the imported diesel generators and parts violated Environmental Protection Agency (EPA) regulations for diesel non-road engines.

The petitioner requests relief from forfeiture based on the arguments the seized generators are stationary generators with non-road engines and are compliant with EPA's regulations. Therefore, Customs and Border Protection did not have probable cause to seize the subject generators. The importer did not intend to violate any United States law and requests permission to manipulate the generators.

On October 24, 2006, this office advised that the petition was referred to EPA. On November 13, 2006, EPA provided their recommendation to allow export of the seized generators to a location outside the North American continent.

A review of the case file reveals the violation occurred as charged. The EPA Form 3520-21 presented with the entry declared the subject generators as excluded from the CI non-road regulations because they are stationary source engines. EPA recommended CBP seize the generators because there was an indication of portability. The size and configuration indicated they were portable and transportable. The importer failed to prove during the detention period the generators were stationary sources and in compliance with 40 CFR 89.2. Additionally, the seized generators failed to comply with the labeling requirements under 40 CFR 1039.20. Forfeiture of the seized property will be remitted upon compliance with the following conditions.

1. Payment of $3,046 (10% of dutiable value - $30,462).

Exhibit A

-2-

2. Execution of the enclosed Hold Harmless Agreement.
3. Payment of storage costs estimated to be $3,717 as of November 30, 2006. Upon receipt of the required documentation, a disposition order will be issued authorizing release of the seized property. It will provide the telephone number of the Customs seized property contractor who should be contacted to ascertain the location of the property and the total seizure costs (which are paid directly to the contractor). Lastly you should provide the name of the individual who will accept custody of the seized property from the storage contractor. The property will be released only to this person, unless an agent is specifically identified in a notarized letter of authorization.
4. Export to a non-contiguous country (not Canada or Mexico) under Customs supervision. A CBP Form 7512 Transportation Entry should be prepared citing the method of transportation as I.E. (immediate exportation). The CBP Form 7512 must reference the seizure number and state "No Diversion Allowed." Upon receipt of an acceptable CBP Form 7512, release to the designated inbond carrier will be authorized. After exportation has been accomplished, CHS Machine Shop will be required to present a copy of the CBP Form 7512 signed by both the exporting carrier and Customs at the port of exportation.

Payment in the amount of $3,046 and the executed Hold Harmless Agreement are due within 30 days from the date of this letter to Customs and Border Protection, One East Bay Street, Savannah, Georgia 31401. A copy of this letter should accompany your payment. Upon compliance with all conditions of release specified in this letter, action will be taken to release the seized property.

This decision is effective for 30 days. Failure to comply within the stated time period will result in Customs proceeding with forfeiture in accordance with 19 USC 1607 and 19 CFR 162.45 by publication in the Savannah Morning News beginning on January 11, 2007.

Should further information be required, please contact Mary J. Pringle at 912-447-9435.

Sincerely,

Frank Jaramillo
Area Port Director

Enclosure

1 East Bay Street
Savannah, GA 31401



## Customs and Border Protection Service
## HOLD HARMLESS RELEASE AGREEMENT

Customs Case Number: 2006-1703-000118-01
Property: 25 each diesel generators and parts
Released to: CHS Machine Shop

This Agreement is made between CHS Machine Shop and the Customs and Border Protection, Department of Homeland Security.

This Agreement is made in consideration of the return of the property described above which is the subject of Case Number shown above, and was seized for violation of title 19 USC 1595a(c)(2)(A), and 40 CFR Part 90.1003(a)(1)(i) and for other consideration, the receipt of which is hereby acknowledged.

In consideration of the release of the above listed property to the above named party, I, CHS Machine Shop, hereby release and forever discharge the United States, its officers, agents, servants, and employees, their heirs, successors, or assigns, from any and all action, suits, proceedings, debts, dues, contracts, judgments, damages, claims, and/or demands whatsoever in law or equity which I, my heirs, successors, or assigns, ever had, now have, or may have in the future in connection with the detention, seizure, and/or release by the Customs and Border Protection of the above listed property.

I, CHS Machine Shop, further agree to hold and save the United States, its officers, agents, servants and employees, their heirs, successors, or assigns, harmless from any claims by any others, including costs and expenses for or on account of any and all lawsuits or claims of any character for or on account of any and all lawsuits or claims of any character whatsoever in connection with the detention, seizure, and/or release by the Customs and Border Protection of the above listed property.

In addition, I agree to reimburse the United States, its employees, or agents from any necessary expenses, attorney's fees, or costs incurred in the enforcement of any part of this agreement within thirty (30) days after receiving written notice that the United States, its employees, or agents has incurred them.

By accepting this remission decision, petitioner understands that he is waiving any claim to attorney's fees, interest or any other relief not specifically provided for in this decision.

Name: _____
(Print Name)
Signature*: _____
(See asterisk below)

_____
Customs Officer (print name)

_____
Customs Officer (signature)

Address: _____

Date: _____

Subscribed before me:
this _____ day of _____

Notary Public (print name) _____
Notary Public (signature) _____
My Commission expires: _____

*Either a Customs Officer or a Notary must witness the signing of this document.

AFFIDAVIT OF PUBLICATION
SAVANNAH MORNING NEWS

STATE OF GEORGIA
COUNTY OF CHATHAM

Personally appeared before me, Gretchen Speerstra, to me known, who being sworn, deposes and says:

That she is the Classified Inside Sales Manager for Southeastern Newspaper Corporation, a Georgia corporation, doing business in Chatham County, GA, under the trade name of Savannah Morning News, a daily newspaper published in said county;

That he is authorized to make affidavits of publication on behalf of said published corporation;

That said newspaper is of general circulation in said county and in the area adjacent thereto;

That he has reviewed the regular editions of the Savannah Morning News, published on:

_Jan 11_, 2007 _Jan 18_, 2007,
_Jan 25_, 2007, _____, 2007,

and finds that the following advertisement, to-wit:

Appeared in each of said editions.
Sworn to and subscribed before me

This _30_ day of _Jan_, 2007

(Deponent) G. Speerstra

Eugene J. Cronk
Notary Public, Chatham County, Ga.

EUGENE J. CRONK
Notary Public, Chatham County, GA
My Commission Expires January 28, 2010

Exhibit B

Publication Dates: January 11, 2007, January 18, 2007 and January 25, 2007.

DEPARTMENT OF HOMELAND SECURITY, CUSTOMS AND BORDER PROTECTION - Notice is hereby given as required by 19 USC 1607, and 19 CFR 162.45 of the seizure and intent to forfeit the property described below which is in violation of Customs laws and/or other pertinent statutes. Any person having an interest therein and desiring to claim any of the said property must appear at the Office of the Fines, Penalties and Forfeitures Officer, Customs and Border Protection, One East Bay Street, Savannah, Georgia, and file within twenty (20) days from the date of the first publication a claim to such property and a cost bond (in the appropriate amount). In default of which, the property will be declared forfeited to the United States and disposed of in accordance with the law.

2006-1703-000052-01; Date of Seizure: April 24, 2006; Place of Seizure: Savannah, Georgia; Description: 141 each counterfeit handbags, 136 each counterfeit wallets/wristlets; 29 each counterfeit backpacks/totes, and each counterfeit attache case; seven each counterfeit belts; two pairs counterfeit shoes; 49 each counterfeit jewelry; four each counterfeit necklaces; four each counterfeit watches; 10 each counterfeit ties; 13 each counterfeit scarves; one each counterfeit pen; Laws Violated: 19 USC 1526(e); Bond: $460.

2006-1703-000117-01; Date of Seizure: September 21, 2006; Place of Seizure: Savannah, Georgia; Description: one each 1987 Toyota Dyna Fire truck, Vin # YY51-0006019, and one each 1993 Toyota Land Cruiser Fire truck, Vin # FJ45100126; Laws Violated: 19 USC 1450(c)(2) and 49 USC 30112; Bond: $1,746.00.

2006-1703-000119-01; Date of Seizure: September 21, 2006; Place of Seizure: Savannah, Georgia; Description: 25 each diesel generators and parts; Laws Violated: 19 USC 1450(c)(2) and 40 CFR 90.1003(a)(1)(I); Bond: $4,001.

2007-1703-000013-01; Date of Seizure: November 8, 2006; Place of Seizure: Savannah, Georgia; Description: 11 each golf cart parts; Laws Violated: 19 USC 1526(e); Bond: $2,075.00.

2007-1703-000018-01; Date of Seizure: December 1, 2006; Place of Seizure: Savannah, Georgia; Description: 26 each motorcycles; Laws Violated: 19 USC 1450(c)(2) and 19 USC 30112; Bond: $1,000.

TOTAL P.08