UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
CHS INDUSTRIES, LLC,            :
                                :
          Plaintiff,            :
                                :
     v.                         :   Civil Action No. 06-2205 (GK)
                                :
UNITED STATES CUSTOMS AND       :
BORDER PROTECTION, et al.,      :
                                :
          Defendants.           :
```

**MEMORANDUM OPINION**

Plaintiff CHS Industries, LLC ("CHS" or "Plaintiff") brings this action against Defendants United States Customs and Border Protection ("Customs"), United States Environmental Protection Agency ("EPA"), Unknown Employees of United States Customs and Border Protection, and Unknown Employees of United States Environmental Protection Agency (collectively, "Defendants") pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure (Count I) and Bivens v. Six Unknown Federal Agents, 403 U.S. 388 (1971) (Count II).

This case is now before the Court on Defendants' Motion to Dismiss. Upon consideration of the Motion, Opposition, Reply, the entire record herein, and for the reasons set forth below, Defendants' Motion is **granted**.

**I.      Background**[1]

Plaintiff is located and incorporated in Edgewater, Florida. It purchases stationary generators with nonroad engines[2] from Fuan Lujuan Electrical Machinery Company, Limited ("Fuan") in Fujian, China and imports them into the United States. Fuan manufactures the generators, packs and labels them, and delivers them to Plaintiff's Edgewater location. The generators have been sold to buyers prior to their delivery to Edgewater.

On August 7, 2006, a container of generators destined for Plaintiff's facilities arrived in Port of Savannah, Georgia and was detained by Customs.[3] That same day, Plaintiff contacted Customs to determine why the container was detained and how to procure its release. On August 21, 2006, while Customs waited for the EPA to review the shipment, it sent Plaintiff a Notice of Detention regarding the container. In the Notice, Customs informed Plaintiff

---

[1]   For all purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008). Therefore, the facts set forth herein are taken from Plaintiff's Complaint unless otherwise noted.

[2]   Plaintiff does not define this term.

[3]   CHS uses this August 7, 2006 date in its Complaint but lists the arrival date as August 4, 2006 in its Opposition to Defendants' Motion to Dismiss. Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 1. The difference in dates has no significance for purposes of this Motion.

that the wood shipping materials used in the container were not permitted to enter the United States.

On September 21, 2006, Customs seized CHS' "goods"[4] because they did not comply with 40 C.F.R. § 90.1003(a)(1)(i), which requires a certificate of conformity with emissions regulations for nonroad engines. Compl. ¶ 18. On September 27, 2008, Plaintiff "submitted an application to manipulate and exported [sic] the noncompliant wood packing materials."[5] Id. ¶ 17.

On October 11, 2006, Plaintiff submitted a petition for relief to Customs. On November 13, 2006, Defendant Jeffrey A. Kodish ("Kodish"),[6] an Attorney-Advisor for the EPA, recommended to Customs that it refuse to release the generators because they failed to comply with 40 C.F.R. §§ 89.1003(a)(1)(ii) and 89.1003(a)(6), both of which also require a certificate of conformity with emissions regulations for nonroad engines.

---

[4]  Plaintiff does not specify what the term "goods" references.

[5]  Plaintiff does not specify what agency or person received this application, nor does it define or explain the term "application to manipulate."

[6]   There is a question as to whether Kodish has been effectively made a Defendant in this case, as he has not been served or included in the caption. See infra, p. 13.

On November 14, 2006, Defendant Frank Jaramillo ("Jaramillo"),[7] Area Port Director for Customs in Savannah, or Defendant Mary C. Bensel Mills ("Mills"),[8] a Fines, Penalties and Forfeitures Officer at Customs' Savannah location, denied Plaintiff's October 11, 2006 petition based on 40 C.F.R. § 90.1003(a)(1)(ii). However, he/she "permit[ted]" Plaintiff to export the noncompliant wood, and to export the generators to a non-contiguous country. Compl. ¶ 25, Ex. D. On June 13, 2007, Customs sold the generators at auction. [Dkt. No. 5-3, filed June 12, 2009.]

Plaintiff alleges that, as a result of Defendants' detention of its container, it lost orders from customers, suffered "manifest injustice" and "irreparable injury," and had its business "effectively shut[] down." Compl. ¶¶ 29-30. It also alleges that it lost $2592.50 as a result of needing to export the noncompliant wood, three wholesale business accounts with potential annual sales of $201,000 per year, and "all retail accounts which have a potential net profit of $270,000 with a potential bill of $40,500 in potential service and a potential sales [sic] of $27,000 for

---

[7] There is a question as to whether Jaramillo has been effectively made a Defendant in this case, as he has not been served or included in the caption. See infra, p. 13.

[8] There is also a question as to whether Mill has been effectively made a defendant in this case, as she has not been served or included in the caption. See infra, p. 13.

replacement parts." Id. ¶¶ 37-40.  It further states that these losses caused it to decrease its payroll, use credit to purchase materials, and alter its normal course of business.

On December 26, 2006, Plaintiff filed the instant Complaint,[9] alleging that it is entitled to "Return of Property Pursuant to Rule 41(g)" of the Federal Rules of Criminal Procedure (Count I) and "Monetary Damages Pursuant [t]o Bivens" (Count II).  Id. at 5, 6.  Plaintiff cites a violation of its Fifth Amendment rights as the basis for its Bivens claim.  See id. ¶¶ 1, 33, 35, 43.

In September 2007, Plaintiff filed an administrative petition with Customs seeking the proceeds of the auction of the generators.  The record is not clear as to whether the petition has been decided.[10]

On March 24, 2008, in response to a March 10, 2008 Order for parties to submit praecipes regarding further proceedings, Plaintiff filed an Amended Motion Opposing Defendants' Motion to Dismiss or in the Alternative to Transfer and its Points and Authorities [Dkt. No. 16].  In this document, Plaintiff stated that

---

[9] In addition to the questions about the named Defendants discussed supra, notes 6-8, Plaintiff lists the United Stats as a Defendant in paragraph 4 of its Complaint but also failed to effect service of process or include the United States in the Complaint's caption or as a Defendant on ECF.

[10] Defendants wish to proceed with a resolution of their Motion to Dismiss regardless of the disposition of this petition.  Def.'s Praecipe at 2.

it seeks damages "as an equitable remedy or under the Federal Tort Claims Act," referencing Federal Rule of Criminal Procedure 41(g) in its request for equitable relief.[11]  Pl.'s Am. Mot. Opp'ing at 2.

## II.  Standard of Review

To survive a motion to dismiss, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] [his or her] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 579.

Under the standard set out in Twombly, a "court deciding a motion to dismiss must not make any judgment about the probability of the plaintiff's success . . . must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21.November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotation marks and citations omitted).

---

[11] On March 23, 2009, Plaintiff filed a second suit in this Court. CHS Indus., LLC v. U.S. Customs & Border Prot., C.A. No. 09-544 (GK).  In that case, Plaintiff alleges that Customs and the EPA violated the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq.

**III. Analysis**

    **A.   Count I Is Dismissed for Lack of Subject Matter Jurisdiction**

Our Court of Appeals has explained that "Rule 41(g) [of the Federal Rules of Criminal Procedure] is applicable only when property is seized 'for use in a criminal prosecution.'" United States v. Price, 914 F.2d 1507, 1511 (D.C. Cir. 1990) (quoting In re Seizure Warrant, 830 F.2d 372, 374 (D.C. Cir. 1987)). In Price, the court held that "once the Government initiates an administrative forfeiture proceeding and the property is not the subject of an ongoing criminal proceeding, the District Court has no jurisdiction to resolve the issue of return of property." Id. at 1508, 1512.

Plaintiff cites to DiBella v. United States, 369 U.S. 121 (1962), in arguing that "Rule 41(g) motions may exist apart from criminal actions." Pl.'s Mem. in Support of Mot. Opp'ing ("Pl.'s Mem.") at 7. However, there is no conflict between DiBella and Price. DiBella involved the interlocutory appealability of a pre-trial motion to suppress evidence in a criminal prosecution. The Supreme Court said nothing about the exercise of jurisdiction in a civil case brought pursuant to Fed. R. Crim. P. 41(g).[12] As our own

---

[12]  At the time DiBella was decided, the relevant Criminal Rule under discussion was Rule 41(e).

Court of Appeals stated in Price, if the seized property in question is not the subject of a criminal proceeding in progress, the court has no jurisdiction pursuant to Rule 41(g).

In this case, the government initiated administrative forfeiture proceedings, the generators were auctioned, and Plaintiff itself filed an administrative petition in response to the sale. Plaintiff has introduced no evidence to show that this case is a criminal proceeding. Therefore, Count I is dismissed for lack of subject matter jurisdiction.

**B.   Count II Is Dismissed Because All Defendants Enjoy Immunity from Suit**

In Saucier v. Katz, 533 U.S. 194, 200-01 (2001), the Supreme Court emphasized that qualified immunity is a question of law which the court should decide "at the earliest possible stage in litigation." Therefore, although the parties dispute many legal issues in this case, the Court must first address the immunity question.

Defendants assert qualified immunity for the three named individual Defendants and for all unnamed individual Defendants, as well as sovereign immunity for all Defendants acting in their official capacities. Plaintiff responds by citing the Second Circuit opinion in Bivens v. Six Unknown Federal Agents, 456 F.2d 1339, 1341 (2d Cir. 1972), asserting that "[f]ederal employees,

agents and officers performing their law enforcement functions have no immunity to protect themselves from damages suits charging violations of constitutional rights." Pl.'s Mem. at 6.

However, the Supreme Court reversed the Second Circuit's decision in <u>Bivens</u>. See <u>Bivens v. Six Unknown Federal Agents</u>, 403 U.S. 388 (1971). In the wake of the Supreme Court's decision, it is now well-settled that qualified immunity is an appropriate defense in <u>Bivens</u> litigation. See <u>Rasul v. Myers</u>, 512 F.3d 644, 652 n.3 (D.C. Cir 2008); <u>Jones v. Yanta</u>, 610 F. Supp. 2d 34, 43 (D.D.C. 2009).

### 1.   The Agency Defendants and Agency Employees Acting in Their Official Capacities Enjoy Sovereign Immunity

<u>Bivens</u> created a cause of action against a federal officer acting in her individual capacity in which the plaintiff may collect monetary damages if the officer is found to have violated plaintiff's constitutional rights. 403 U.S. at 395-96. <u>Bivens</u> only provides a cause of action against individuals. See <u>Kauffman v. Anglo-Am. Sch. of Sofia</u>, 28 F.3d 1223, 1226 (D.C. Cir. 1994).

A <u>Bivens</u> claim may not be brought against the United States government or its agencies because they have sovereign immunity. See <u>FDIC v. Meyer</u>, 510 U.S 471, 484-86 (1994) (federal agency cannot be sued in a <u>Bivens</u> claim). In this case, Plaintiff filed suit against Customs and the EPA, both of which are federal

agencies.  Therefore, the Bivens claims against Customs and EPA are dismissed on grounds of sovereign immunity.

### 2. The Individual Defendants Enjoy Qualified Immunity

In Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808, 815 (2009), the Supreme Court gave a succinct overview of the qualified immunity doctrine:

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity balances two important interests -- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Groh v. Ramirez, 540 U.S. 551 (2004) (Kennedy, J., dissenting) (citing Butz v. Economou, 438 U.S. 478 (1978) (noting that qualified immunity covers "mere mistakes in judgment whether the mistake is one of fact or one of law")).

In evaluating an official's conduct, the inquiry centers "on the objective legal reasonableness of [her] acts." Harlow, 457 U.S. at 819.  Immunity, if found, serves as a total immunity from suit, not just "a mere defense from liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

Under pre-existing precedent, the Court had required the trial court to first determine whether the facts alleged by a plaintiff made out a violation of a constitutional right and, if it did, to then determine whether the asserted right was "clearly established" at the time of the violation. Saucier, 533 U.S. at 201.  In Pearson, the Supreme Court "ruled that the Saucier sequence is optional and that lower federal courts have the discretion to decide only the more narrow 'clearly established' issue 'in light of the circumstances in the particular case at hand.'" Rasul v. Myers, 563 F.3d 527, 530 (D.C. Cir. 2009) (quoting Pearson, 129 S. Ct. at 818).

In this case, the Court will address the first question as to what, if any, constitutional right has been violated. Plaintiff alleges the individual Defendants violated the Fifth Amendment by seizing its goods upon their arrival in the United States.  The Fifth Amendment states that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. Amend. V.  A Fifth Amendment violation does not occur unless there is a "constitutionally protected property or liberty interest at stake," Giacobbi v. Biermann, 780 F. Supp. 33, 41 (D.D.C. 1992) (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564 (1972)), and the plaintiff must have a "legitimate claim of entitlement" to the government conduct in question rather than a

mere "unilateral expectation of it," Roth, 408 U.S. at 577. The underpinning of due process is "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). Negligence or "mere lack of due care" resulting in deprivation of property does not constitute a due process violation. See Daniels v. Williams, 474 U.S. 327, 330-31 (1986).

Because some discussion of the merits is built into the first step of the qualified immunity analysis, referring to a 12(b)(6) framework provides guidance in evaluating whether a constitutional right has been violated. In Twombly, 550 U.S. at 555, the Supreme Court stated that, when facing a 12(b)(6) motion, "a plaintiff's obligation to provide the 'grounds' of his 'entitl[ment] to relief' requires more than labels and conclusions." Some amount of facts -- "rather than a blanket assertion" -- is necessary to provide "plausible grounds" for and create a "reasonable expectation that discovery will reveal evidence" of the alleged wrongdoing. Id. at 556. Furthermore, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

### a. Named and Unnamed Customs Employees

It is well-established that Customs has the authority to search and seize goods or merchandise that is noncompliant with

U.S. law. See, e.g., 19 U.S.C. § 1602 (2006). As in this case, seizures may be made if the "container" or "wrapping" of imported goods is noncompliant. 19 U.S.C. § 1595(a)(1)(C) (2006). In Fourth Amendment challenges to seizures by Customs, the Supreme Court has held that Customs officials are not required to obtain probable cause before conducting a search of people or merchandise entering the United States. See, e.g., United States v. Ramsey, 431 U.S. 606, 616-17 (1977) ("That searches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border, should, by now, require no extended demonstration.").

Plaintiff states that "the government violated its Fifth Amendment Due Process rights because the government would not permit entry of its seized generators after it had provided assistance and information regarding the labeling procedure which was utilized by CHS." Pl.'s Mem. at 8. Assuming that Plaintiff is including the individual Defendants in referring to "the government," it has failed to set forth any facts showing that Customs officers acted beyond the bounds of their express statutory authority, nor suggested any unreasonableness in their actions.

To survive a motion to dismiss, a plaintiff must provide a "'showing' rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 556 (quoting 5 Wright & Miller § 1202, at 94, 95). To make this showing, Plaintiff must offer enough facts to establish the "plausibility" of the alleged wrongdoing. Id. Like the Fourth Amendment cases, Plaintiff does not make out a Fifth Amendment constitutional violation when it alleges that Customs seized its goods and that the seizure was conducted pursuant to its statutory authority. For these reasons, Plaintiff fails to present a set of facts that plausibly allege a constitutional violation.

### b.   Named and Unnamed EPA Employees

Under 40 C.F.R. § 89.1003, EPA has authority to enforce regulations regarding emissions from nonroad engines. 40 C.F.R. § 89.1003 (2008). These regulations include, amongst other things, compliance with certain labeling standards. See Indep. Equip. Dealers Ass'n v. EPA, 372 F.3d 420, 422 (D.C. Cir. 2004). Because many different types of engines are imported from abroad, importers must also comply with EPA regulations in order to be allowed entry. Id. For this reason, Customs and EPA may collaborate where both agencies' regulations are at issue. In addition, our Court of Appeals has held that "we lack[] authority to review claims where '[the EPA] merely expresses its view of what the law requires of a

party.'" Id. at 427 (quoting AT&T v. EEOC, 270 F.3d 973, 975 (D.C. Cir. 2001)).

In its Complaint, Plaintiff includes only two factual assertions regarding EPA and its employees: (1) that Plaintiff had consulted EPA prior to purchasing the generators, and (2) that EPA had recommended to Customs that the generators not be released. Compl. ¶¶ 22, 24. Neither of these allegations reveals any possible conduct which falls outside EPA's statutory authority or is in violation of the Constitution. Even if Plaintiff had demonstrated a violation of its constitutional rights, EPA has done nothing more than express its view of the law. Therefore, this Court does not have jurisdiction to review Plaintiff's challenge to EPA's recommendations. Indep. Equip. Dealers Ass'n, 372 F.3d at 427.

For these reasons, Plaintiff fails to pass the first step of the Saucier test, and it is unnecessary to address the second step. The individual Defendants from Customs and EPA must be dismissed because they enjoy qualified immunity.

**C.  No Viable Bivens Claim Exists Because 19 U.S.C. § 1608, et seq. Provides a Comprehensive Statutory and Regulatory Remedy for Customs Seizures**

The Tariff Act of 1930 provides that

> [a]ny person claiming such . . . merchandise
> . . . may at any time within twenty days from
> the date of the first publication of the

> notice of seizure file with the appropriate customs officer a claim stating his interest therein.  Upon the filing of such claim, and the giving of a bond to the United States . . . such customs officer shall transmit such claim and bond, with a duplicate list and description of the articles seized, to the United States attorney for the district in which seizure was made.

19 U.S.C. § 1608 (2006).

As Defendants point out, the Supreme Court has resisted creating a remedy under Bivens where "an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations" already exists. Def.'s Reply at 5 (quoting Bush v. Lucas, 462 U.S. 367, 388 (1983)).

Our Court of Appeals has concluded that, based on Bush, "the more Congress has dealt in detail and over years with a class of cases, the less free are the courts to imply such causes of action without direct statutory support." Siaca v. United States, 754 F.2d 988, 991 (D.C. Cir. 1985).  In the case of Customs seizures, that Court found that "[e]xisting law contains elaborate and carefully articulated provisions dealing with the rights of persons whose property has been seized, possibly illegally." Id.  at 992.

Plaintiff states that it cannot pursue forfeiture proceedings but has failed to coherently set forth its argument or cogently express why the remedies available under the Tariff Act are insufficient.  Because Congress has regulated Customs regulations

since 1789 and provided a remedy for allegedly improper seizures via statute, <u>Siaca</u>, 754 F.2d at 922, it is inappropriate to create a <u>Bivens</u> cause of action in this case.

It is telling that in Plaintiff's last court filing, it fails to even mention its <u>Bivens</u> claim.  Rather, it states that "[t]his court mus [sic] now determine whether defendants' conduct renders them liable for damages either as an equitable remedy or under the FTCA."  Pl.'s Am. Mot. Opp'ing at 4.

**IV. Conclusion**

For the reasons set forth above, Defendants' Motion to Dismiss is **granted**.  An Order shall accompany this Memorandum Opinion.


September 10, 2009                      /s/
                                        Gladys Kessler
                                        United States District Judge


**Copies via ECF to all counsel of record**